**Phillip HOORWITZ a/k/a Philip Horwitz**

v.

**Stanley R. RESOR, Secretary of the Army.**

**Civ. No. 11957.**

United States District Court,
D. Connecticut.

Oct. 8, 1970.

Dominic J. Squatrito, Manchester, Conn., for plaintiff.

F. Mac Buckley, Asst. U. S. Atty., Hartford, Conn., for defendant.

RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

BLUMENFELD, District Judge.

By this mandamus action, plaintiff seeks to compel the Secretary of the Army to correct Army records to show that he was honorably discharged. The records now indicate that his discharge was "other than honorable." Both parties have moved for summary judgment.

I.

Despite the paucity of official records in this case, going back over 50 years, the parties agree on the following facts.

On April 29, 1914, at the age of 17, plaintiff enlisted in the United States Regular Army for seven years. While in the service, he was twice convicted by courts martial—once in July of 1915 by a summary court martial and again 'in December of 1916 by a special court martial. Promptly after serving a sentence of six months at hard labor and forfeiture of two-thirds of his pay imposed by the latter court, he was discharged from the Army on May 30, 1917, under the provisions of Par. 148½ of Army Regulations (1913 as amended [1]).

---

1. Paragraph 148½ of Army Regulations provided in pertinent part at that time that when an enlisted man was inapt, could not be adapted to the service or gave evidence of habits or traits of character which rendered his retention in the service undesirable, or was disqualified for service, physically or in character through misconduct, his commander would report the facts to the commanding officer, who would convene a Board of Officers to determine whether the soldier should be discharged prior to the expiration of his term of enlistment; that

He received a so-called "blue discharge" which is neither honorable nor dishonorable. Army Reg. ¶ 150, Sec. 3. The blue discharge certificate was handed to him at the time, but he claims to have subsequently lost it, along with his wallet, to a pickpocket. In 1918 he applied for a replacement and obtained a document entitled "Certificate In Lieu Of Lost or Destroyed Discharge Certificate."

In 1932, following an inquiry on his behalf by the Jewish War Veterans, he was informed that his discharge was under other than honorable conditions. In 1964, plaintiff applied to the Veterans Administration for his pension as a veteran. The Veterans Administration rejected his application after obtaining a copy of plaintiff's actual discharge certificate which showed his discharge to be other than honorable. In 1965, plaintiff sought relief from the Army Board for Correction of Military Records (ABCMR). Proceedings pursuant to 10 U.S.C. § 1552 to correct the record so as to show that his discharge was honorable were begun in 1966. After a full hearing before the ABCMR his application was denied.[2] This action followed.

## II.

■ Having invoked the jurisdiction of the ABCMR, plaintiff is bound by its decision denying his application unless its action was arbitrary or capricious, Gordon v. United States, 121 F.Supp. 625, 629, 129 Ct.Cl. 270 (1954), or violative of a constitutional right, otherwise illegal or without basis in fact. Ashe v. McNamara, 355 F.2d 277, 281 (1st Cir. 1965).

The two convictions by courts martial prior to his appearance before the Board of three officers who determined that he should be discharged under Army Regulation 148½ furnished ample support for the action of the ABCMR. There is no basis for the claim, nor do the facts suggest, that he was at any time denied due process or deprived of any constitutional right. While he did testify that he did not attend the special court martial because his sergeant said he would plead for him, there is no doubt that he knew of the charge, the hearing and his right to appear and be heard. More to the point is the fact that the ABCMR specifically concluded that his unsupported statements of events which occurred 50 years before were "lacking in conviction and do not offer an acceptable basis for overcoming a reasonable presumption of regularity of the records." That conclusion cannot be regarded as erroneous, let alone as arbitrary or capricious. "The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." United States v. Chemical Foundation, Inc., 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926).

■ There is nothing to support a claim that the Secretary of the Army, acting through the ABCMR, has acted arbitrarily, capriciously, or illegally in refusing to change the records so as to reflect that the plaintiff was honorably discharged.

## III.

The government argues additionally that the plaintiff's delay of almost 50 years in asserting his claim is so un-

if discharge were recommended, the Board would also recommend the character to be given on the discharge and the proceedings of the Board, when approved by the convening authority, would be forwarded to the officer exercising general court martial jurisdiction over the command for final action; that if the findings of the Board were approved, the proceedings would be sent to the officer, who makes the discharge and then forwarded by him to the Adjutant General's Office for file; that the discharge given to soldiers under provisions of this paragraph would be that prescribed by section 3 of Paragraph 150.

2. Plaintiff's application to the ABCMR was granted to the extent of deleting from his record any reference to drug addiction or alcoholism. That apparently was enough to qualify him for pension benefits which were extended to him on October 5, 1966, retroactive to June 30, 1965.

reasonable that his claim should be barred by laches. The ABCMR did not rely upon that ground for its decision, nor do I for mine. The fact that a specific Board has been created by Congress for the purpose of correcting military records would seem to indicate congressional intent that the burden of preserving evidence relevant to the status of military personnel ought to rest on the record-keeping duty of the military services rather than on the personnel. Furthermore, the government has the facilities for searching out relevant records.[3] If record evidence was lost in this case, it does not appear that its loss was due to any delay by the plaintiff which would justify charging him with laches.

## IV.

There being no genuine issue as to any material fact, the defendant's motion for summary judgment ought to be and it hereby is granted. The plaintiff's cross-motion for summary judgment is denied.

Enter judgment for the defendant.

---

3. Plaintiff's two court martials were confirmed by a transcript of his pay record secured by the Federal Records Center in 1966, from the General Accounting Office, which revealed that pay had been deducted during the applicable periods pursuant to sentences of two courts martial.