**Hobart A. BAKER, Plaintiff-Appellee,**

v.

**James A. SCHLESINGER, Secretary of Defense, Defendant-Appellant.**

**No. 74–1679.**

United States Court of Appeals, Sixth Circuit.

Argued June 16, 1975.

Decided Oct. 3, 1975.

---

William W. Milligan, U. S. Atty., Columbus, Ohio, Robert E. Kopp, Carla Hills, Richard A. Olderman, Dept. of Justice, Washington, D. C., for defendant-appellant.

Willis Wolfe, Jr., Canal Winchester, Ohio, Robert T. Winston, Jr., Norton, Va., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and EDWARDS and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This appeal is from a supplemental opinion and order of the district court reinstating a previous order granting a writ of mandamus to compel the Secre-

tary of Defense to vacate Baker's court-martial conviction and to take other appropriate corrective action. The court concluded that such relief was warranted because Baker had been denied the effective assistance of counsel, in violation of the Sixth Amendment, in connection with his 1946 General Court-Martial trial in Germany.

On this appeal the relevant issues are: (1) Whether the district court had jurisdiction to entertain a petition for a writ of mandamus pursuant to 28 U.S.C. Sec. 1361, seeking collateral review of a court-matrial conviction[1] and (2) Whether the district court properly found that there was sufficient evidence to support its finding that appellee was denied effective assistance of counsel, and to support its order directing the Secretary of Defense to overturn the decision of the Army Board for the Correction of Military Records in refusing to vacate Baker's court-martial conviction.

In 1964 appellee applied to the Army Board for the Correction of Military Records (ABCMR)[2] to have his 1946 court-martial set aside and the character of his Army discharge changed from dishonorable to honorable. When this claim was rejected by the ABCMR, appellee brought the present action in 1968 in the district court, pursuant to 28

U.S.C. Sec. 1361, to compel the Secretary of Defense to grant him the relief requested. The district court heard evidence and entered judgment for appellee, ordering the Secretary to vacate appellee's court-martial conviction, to delete all record of appellee's dishonorable discharge, to grant appellee an honorable discharge, and to restore to him all back pay lost as a result of the conviction and sentence.[3] On appeal by the Secretary to this Court, the district court's order was vacated with directions to that court to remand the action to the ABCMR for consideration of evidence on the issue of deprivation of the right to effective assistance of counsel. After reconsideration, the ABCMR again rejected Baker's claim and the Secretary of the Army affirmed. Thereafter, the district court, having retained jurisdiction of the case, reinstated its previous order directing the annulment of Baker's court-martial conviction. This appeal by the Secretary of Defense ensued.

The General Court-Martial trial was held in Germany in 1946, shortly after the close of World War II. At that time appellee was serving as an enlisted man in the United States Army. He was charged with manslaughter arising from a collision between the Army truck which he was driving and a German ve-

---

1. 28 U.S.C. Sec. 1361 reads:

    The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

2. Pursuant to 10 U.S.C. Sec. 1552.

3. The most significant item of evidence on the issue of ineffective assistance of counsel was the deposition of Colonel Westray E. Wilson who had served as counsel for appellee at his court-martial. This deposition was before the district court but had not been before the ABCMR. The remand order of this Court was designed to enable the ABCMR to reconsider the alleged ineffective assistance of counsel question in light of this evidence in addition to any other relevant evidence.

    The conditions of the court-martial as described by Colonel Wilson included the following statements: (1) The commanding General had advised courts-martial to convict if a pri-

ma facie case were established and to render maximum sentences; (2) Courts-martial had been reprimanded for verdicts of acquittal; (3) Appellee's court-martial lasted until 2:00 in the morning; and (4) Defense counsel was required to cross-examine through an interpreter.

The testimony of Colonel Wilson was interpreted by the district court as indicating that the circumstances in Germany in 1946 were such as to preclude him from rendering effective assistance of counsel. This conclusion was based upon statements by Colonel Wilson that as the result of the lapse of time of several months between the offense and his being appointed counsel in combination with the state of flux of the German population immediately following World War II, he was unable to locate witnesses to support appellee's version of the facts of the accident. Upon expiration of his sentence in 1948, appellee was unconditionally released from the control of the Army.

hicle whose driver was killed in the accident. Upon appellee's conviction for involuntary manslaughter, he was sentenced to dishonorable discharge, to confinement at hard labor for three years, and required to forfeit all pay and allowances for three years. The Judge Advocate General's office examined the records and found that the evidence was sufficient to support the conviction and sentence. In November, 1947, after service of approximately two years of the sentence, appellee was released on parole and dishonorably discharged.

The Secretary initially argued that the district court was without jurisdiction to review collaterally appellee's court-martial conviction by reason of the finality provision of Article 76 of the Uniform Code of Military Justice[4] which provides that actions taken pursuant to court-martial proceedings are final and binding on all agencies, including the courts. It was contended that the ABCMR statute,[5] providing a procedure for correcting military records, was not intended to create an exception to the finality rule of Article 76.

On October 22, 1974, this Court granted appellee's motion to hold oral argument in abeyance pending consideration by the Supreme Court of cases raising the issue of the federal courts' jurisdiction of collateral review, other than by habeas corpus, of court-martial convictions. The Supreme Court in *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), reached the jurisdictional issue, holding that Article 76 is not a jurisdictional bar to a collateral attack in a civil court of court-mar-

tial convictions, other than by habeas corpus.

*Councilman* does not, of course, open the door to collateral attacks on court-martial convictions indiscriminately. The Supreme Court specifically stated that reviewability may turn on the nature of the alleged defect in the proceedings and the gravity of the harm for which relief is sought. Approval was expressed of the construction given Article 76 by other courts limiting review to cases involving a lack of jurisdiction or fundamental or constitutional defects. *See, e. g., Davies v. Resor*, 445 F.2d 1331 (1st Cir. 1971); *Kauffman v. Secretary of the Air Force*, 135 U.S.App.D.C. 1, 415 F.2d 991 (1969), *cert. denied*, 396 U.S. 1013, 90 S.Ct. 572, 24 L.Ed.2d 505 (1970); *Gallagher v. Quinn*, 124 U.S.App.D.C. 172, 363 F.2d 301, *cert. denied*, 385 U.S. 881, 87 S.Ct. 167, 17 L.Ed.2d 108 (1966). It is conceded here, as indeed it must be, that assistance of counsel is of constitutional magnitude.

■ *Councilman* was an action filed in the district court to enjoin court-martial proceedings against an army captain on a charge of possession, transfer and sale of marijuana. Federal court jurisdiction was invoked under the general federal-question statute, it being claimed that the court-martial proceedings were void because the charges against the Captain were not "service connected." The specific decision in *Councilman* was that Article 76 does not stand as a bar to an action challenging court-martial convictions where jurisdiction exists under 28 U.S.C. Sec. 1331. We are convinced, however, that the Supreme Court's opinion may properly be read to support ju-

---

4. 10 U.S.C. Sec. 876. Article 76 reads as follows:

**§ 876. Art. 76. Finality of proceedings, findings, and sentences**

The appellate review of records of trial provided by this chapter, the proceedings, findings, and sentences of courts-martial as approved, reviewed, or affirmed as required by this chapter, and all dismissals and discharges carried into execution under sentences by courts-martial following approval, review, or affirmation as required by this

chapter, are final and conclusive. Orders publishing the proceedings of courts-martial and all action taken pursuant to those proceedings are binding upon all departments, courts, agencies, and officers of the United States, subject only to action upon a petition for a new trial as provided in section 873 of this title (article 73) and to action by the Secretary concerned as provided in section 874 of this title (article 74), and the authority of the President.

5. 10 U.S.C. Sec. 1552.

risdiction of actions challenging court-martial convictions under 28 U.S.C. Sec. 1361. The Court speaks in general terms in reaching the conclusion that the finality clause of Article 76 was not intended to confine collateral attack on court-martial proceedings in Article III courts exclusively to petitions for habeas corpus. Our view that the Court's pronouncement should be read as having wider application is reinforced by the fact that every circuit which has considered the question has held that civil courts have jurisdiction upon allegations of fundamental defects to entertain civil actions under Sec. 1361, challenging the validity of court-martial convictions. *Homcy v. Resor,* 147 U.S.App.D.C. 277, 455 F.2d 1345 (1971); *Haines v. United States,* 453 F.2d 233 (3d Cir. 1971); *Angle v. Laird,* 429 F.2d 892 (10th Cir. 1970), *cert. denied,* 401 U.S. 918, 91 S.Ct. 90, 27 L.Ed.2d 819 (1971); *Ragoni v. United States,* 424 F.2d 261 (3d Cir. 1970); *Kauffman v. Secretary of the Air Force,* 135 U.S.App.D.C. 1, 415 F.2d 991 (1969), *cert. denied,* 396 U.S. 1013, 90 S.Ct. 572, 24 L.Ed.2d 505 (1970); *Smith v. McNamara,* 395 F.2d 896 (10th Cir. 1968), *cert. denied,* 394 U.S. 934, 89 S.Ct. 1211, 22 L.Ed.2d 466 (1969); *Ashe v. McNamara,* 355 F.2d 277 (1st Cir. 1965). We therefore hold that the district court had jurisdiction under 28 U.S.C. Sec. 1361 to entertain the action for mandamus.

■ Turning to the merits, we observe that Article III courts must assess the case "in light of the deference that should be accorded the judgments of the carefully designed military justice system established by Congress." *Schlesinger v. Councilman,* 420 U.S. 738, 753, 95 S.Ct. 1300, p. 1310, 43 L.Ed.2d 591 (1975). As the Supreme Court further stated in *Councilman,* 420 U.S. at 746, 95 S.Ct. at 1307:

> This Court repeatedly has recognized that, of necessity, "[m]ilitary law . . . is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment." *Burns v. Wilson,* 346 U.S. 137, 140, 73 S.Ct. 1045, 1047, 97

L.Ed. 1508, (1953); *Parker v. Levy,* 417 U.S. 733, 744, 94 S.Ct. 2547, 2556, 41 L.Ed.2d 439, (1974).

Generally, no relief is available from findings of the ABCMR absent a showing that its action was arbitrary or capricious or unsupported by substantial evidence. *Sanford v. United States,* 399 F.2d 693 (9th Cir. 1968); *Hoorwitz v. Reasor,* 329 F.Supp. 1050 (D.Conn.1970), *aff'd,* 445 F.2d 1407 (2d Cir. 1971); *Denton v. Seamans,* 315 F.Supp. 279 (N.D. Cal.1970), *aff'd,* 483 F.2d 21 (9th Cir. 1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974).

■ The only deficiency in the court-martial proceeding raised on appeal is the alleged ineffective assistance of counsel. In determining whether appellee was denied effective assistance of counsel, it is not necessary to determine whether we are required to apply the "farce and mockery of justice test" obtaining at the time of the appellee's court-martial, *see Diggs v. Welch,* 80 U.S.App.D.C. 5, 148 F.2d 667, *cert. denied,* 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002 (1945), or the standard as recently formulated by this Court in *Beasley v. United States,* 491 F.2d 687 (6th Cir. 1974). This is true because, as we find, under either standard appellee was not deprived of his right to the effective assistance of counsel.

The alleged shortcomings in appellee's defense were, as far as the record indicates, due to unavoidable conditions prevailing at the time. While a court-martial trial going into the early hours of the morning, as alleged by appellee in this case, does not reflect the ideal trial conditions of more settled and peaceful times, the testimony disclosed that such hours were not uncommon in the military at the time nor viewed as a handicap to a proper defense. The use of an interpreter for cross-examination cannot be avoided where the witnesses are not fully familiar with the English language. Similarly, the appointment of Colonel Wilson as defense counsel at a point in time near the trial date was not shown to have denied appellee an effective de-

fense. Colonel Wilson's deposition, upon which appellee so strongly relies, itself states that additional time for investigation would have been of no probable help in improving his preparedness for trial. Colonel Wilson further testified that he did not consider himself burdened in any way so as to interfere with his proper defense of appellee. Indeed, it is not contended that Colonel Wilson did not personally do all that was reasonably possible to defend appellee effectively. Since no challenge is made to Colonel Wilson's competency as an attorney, his failure to object to the less than ideal conditions under which the trial was held cannot be considered as a waiver of appellee's Sixth Amendment rights. Indeed, in view of his unquestioned competency, such failure to object may properly be viewed as a persuasive indication that the situation was not as adverse to a fair trial, as appellee now contends. Cf. *Angle v. Laird,* 429 F.2d 892, 894 (10th Cir. 1970), *cert. denied,* 401 U.S. 918, 91 S.Ct. 90, 27 L.Ed.2d 819 (1971); *Van Bourg v. Nitze,* 128 U.S.App.D.C. 301, 388 F.2d 557 (1967).

Appellee complains that there was such a state of flux and mobility in the German population directly after the war that no additional witnesses could have been found unless they had been located within a few days of the accident. Such, in effect, was Colonel Wilson's testimony in his deposition. We regard this circumstance as an unavoidable result of conditions obtaining in the aftermath of war, not as a wrongful act or omission on the part of those responsible for conducting the court-martial trial or as a failure of duty on the part of defense counsel.

There is no showing that all possible steps were not taken to assure appellee a fair trial despite the handicaps under which the Army was then required to operate. We are unwilling to hold that a court-martial conducted under unavoidably adverse conditions, such as found here, is invalid per se.

■ Appellee stresses the complaint that his trial was tainted by command influence to the extent that defense counsel could not render effective assistance. Particularly relied upon is the testimony of Colonel Wilson that the commanding general, General Bresnahan, had on other occasions advised courts-martial to enter verdicts of guilty upon prima facie proof of the government's case, that court members had been advised to render maximum sentences and had been reprimanded for returning verdicts of not guilty. While these allegations bear somewhat obliquely on the effective assistance of counsel issue, it is to be noted that the ABCMR did address itself to the particular issue on the remand directed by this Court, finding that appellee's records "disclose no evidence of command influence as alleged in the deposition of Colonel Wilson; that his General Court-Martial trial and conviction was conducted in accordance with then existing law and regulations; and that there is no error in connection therewith." Such a finding by the ABCMR is entitled to great weight when judicial intervention is sought. As *Councilman* reminds us:

> The military is "a specialized society separate from the civilian society— with laws and traditions of its own [developed] during its long history." *Parker v. Levy,* 417 U.S. 733, 743, 94 S.Ct. 2547, 2555, 41 L.Ed.2d 439, (1974). Moreover, "it is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise," *Toth v. Quarles,* 350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8, (1955). To prepare for and perform its vital role, the military must insist upon a respect for duty and a discipline without counterpart in civilian life. The laws and traditions governing that discipline have a long history; but they are founded on unique military exigencies as powerful now as in the past. Their contemporary vitality repeatedly has been recognized by Congress.

> In enacting the Uniform Code, Congress attempted to balance these military necessities against the equally

significant interest of ensuring fairness to servicemen charged with military offenses, and to formulate a mechanism by which these often competing interests can be adjusted. As a result, Congress created an integrated system of military courts and review procedures, . . .. *Schlesinger v. Councilman,* 420 U.S. 738, 757, 95 S.Ct. 1300, 1313, 43 L.Ed.2d 591 (1975).

As brought out in the deposition of Colonel Wilson, the 1928 courts-martial manual, which was in effect at the time of appellee's trial, did not prohibit the appointing authority from issuing instructions and reprimands to members of courts-martial for failure to carry out such instructions as those complained of here. It was not until the 1949 manual for courts-martial that commanders were forbidden to give instructions as to future action in a case or to admonish members of courts-martial with respect to their findings and sentences.

It is, of course, conceivable that a defendant in a court-martial proceeding could be denied due process of law by reason of improper command influence brought to bear on the members of the court. However, it is unnecessary for us here to define the precise parameters of improper command influence. This is true for the reason that, as found by the ABCMR, there was no evidence that any improper instructions were given by General Bresnahan or any other commander relating to the particular case in question. While Colonel Wilson stated that it was his *opinion* that members of the court-martial were influenced by the instructions and reprimands given at other times and in connection with other cases, we are of the view that this opinion evidence is a totally insufficient basis upon which to overturn the decision of the established military authorities, including the ABCMR.

To upset a court-martial conviction of the World War II era upon such a nebulous showing would set a precedent capable of producing an endless series of attacks upon military convictions of long standing, with dire consequences to the system of military justice. We conclude that the district court erred in granting the writ.

Reversed.