Charles LORD

v.

Joseph LEHMAN, Secretary of the Navy, Department of the Navy and W. Dean Pfeiffer, Executive Director, Department of the Navy, Board for Correction of Naval Records.

Civ. A. No. 81–2781.

United States District Court, E. D. Pennsylvania.

June 9, 1982.

Mark A. Kaufman, Delaware County Legal Assistance Ass'n, Darby, Pa., for plaintiff.

Thomas J. McBride, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## OPINION

LUONGO, Chief Judge.

Plaintiff, Charles Lord, brought this action pursuant to § 702 of the Administrative Procedure Act, 5 U.S.C. § 702, seeking judicial review of his undesirable discharge from the United States Marine Corps. Named as defendants are Joseph Lehman, Secretary of the Navy, and W. Dean Pfeiffer, Executive Director of the Board for Correction of Naval Records (BCNR). Jurisdiction over this action is pursuant to 28 U.S.C. § 1331. *Neal v. Secretary of Navy*, 639 F.2d 1029, 1036 (3d Cir. 1981). Presently before me are cross-motions for summary judgment.

The material facts in this action are undisputed and are as follows. On October 23, 1974, Lord, a Marine Corps private, was convicted of arson by North Carolina civilian authorities for setting fire to an empty trailer-home and was sentenced to five to seven years in the North Carolina State Prison. This conviction led Lord's commanding officer, Lieutenant Colonel J. A. O'Brien, to recommend that Lord be given an undesirable discharge [1] on the ground of misconduct. (Exhibit B to Complaint at 67) Under the applicable regulation a "[c]onviction by civil authorities ... which [was] tantamount to a finding of guilty of an

---

1. At the time of plaintiff's discharge, the Marine Corps issued five different types of discharge: (1) Honorable, (2) General, (3) Undesirable, (4) Bad Conduct, and (5) Dishonorable. Honorable, General and Undesirable discharges were granted by administrative procedures, whereas Bad Conduct and Dishonorable dis- charges, because they were labelled as punitive, were granted only after a general or special court martial. An undesirable discharge, such as the one received by Lord is described as a discharge under "conditions other than honorable." 32 C.F.R. § 730.51a (1975).

offense for which the maximum penalty under the Uniform Code of Military Justice [was] ... confinement in excess of one year" provided a basis for an undesirable discharge. 32 C.F.R. § 41.7(j)(1); Marine Corps Separation and Retirement Manual ¶ 6018.2(c) (Exhibit D to Complaint) [reprinted at 32 C.F.R. § 730.67(d)(3) (1975)].[2] There is no dispute that Lord's arson conviction was such a conviction.

On July 11, 1975 an Administrative Discharge Board (ADB) was convened at Lord's request pursuant to 32 C.F.R. § 41.-7(i) & § 730.54(b)(1) (1975). Lord did not attend the hearing (apparently due to his incarceration) but he was represented by counsel. (Complaint ¶ 13; *see also* Exhibit B to Complaint at 33) The ADB, which consisted of three military voting members, unanimously recommended to the Commanding General "that Pvt. Lord be separated from the Marine Corps with an Undesirable Discharge under conditions other than honorable due to misconduct on the specific basis of a civil conviction." (Exhibit B to Complaint at 10) This was the only finding made by the ADB. The Commanding General concurred with this recommendation (Exhibit C to Complaint at 24) and Lord was given an undesirable discharge on August 12, 1975. (*Id.* at 28)

On June 21, 1979, Lord applied to the Naval Discharge Review Board (NDRB) to have his discharge upgraded to honorable. (Exhibit A to Complaint at 21) Briefly, pursuant to 10 U.S.C. § 1553, the NDRB is empowered to change a discharge or issue a new discharge to former members of the Navy or Marines. *Id.* § 1553(b). The NDRB conducted a hearing on Lord's application on January 18, 1980. Lord, who was represented by his present counsel, appeared and testified at this hearing. After considering the testimony, Lord's service record, and a "list of contentions of law, fact and discretion to be answered in the board's determination of law, fact and discretion" submitted by Lord's counsel, the

NDRB, finding that none of Lord's contentions were valid, denied Lord's application for an upgrade of his discharge. (Exhibit A to Complaint at 33) The NDRB concluded that

> [t]he type of the applicant's discharge should not be changed because the nature of the offense which resulted in the applicant's civil conviction possesses a degree of aggravation and constitutes moral turpitude which warrants characterization of the applicant's separation as under other than honorable conditions.

[*Id.* at 34]

On June 16, 1980, Lord applied to the Board for Correction of Naval Records (BCNR) to correct his discharge from undesirable to honorable. The BCNR is a civilian board which is empowered to recommend to the Secretary of the Navy the correction of "any military record of that department when ... necessary to correct error or remove an injustice." 10 U.S.C. § 1552(a). *Neal v. Secretary of Navy, supra,* 639 F.2d at 1033 n.4. On June 10, 1981 defendant, Pfeiffer, on behalf of the BCNR, informed Lord in the following letter that his application was denied.

> Dear Mr. Lord:
>
> The Board for Correction of Naval Records considered your application for corrective action in Executive Session on 2 June 1981. This review was conducted in accordance with current procedures applicable to this Board. Documentary material considered by the Board included your application, along with all material submitted in support thereof, your naval records, and pertinent statutes, regulations, and policies. Also considered was an Examiner's Case Summary, a copy of which is enclosed.
>
> After due deliberation the Board determined that the undesirable discharge by reason of misconduct due to civil conviction which you received on 12 August 1975 was appropriate and equitable under laws and regulations in effect at that

---

**2.** The pertinent portions of the Marine Corps Separation and Retirement Manual are reprinted in their entirety at 32 C.F.R. § 730.50 *et seq.*

(1975). In this opinion I will refer to the Code of Federal Regulations.

time. The Board found that you enlisted in the U.S. Marine Corps on 28 December 1973 at age 17.

Prior to the civil offense which led to your administrative discharge, you were awarded nonjudicial punishment on one occasion. Your offenses were failure to be at appointed place of duty and disobedience of orders.

You were convicted of arson, and sentenced to five to seven years imprisonment. An undesirable discharge is authorized whenever the sentence is for longer than one year.

In its review of your application the Board carefully weighed all potentially mitigating factors, such as your allegation of recruiter connivance, service record, youth and immaturity, and processing of the discharge, against the serious nature of your civil offense. It concluded that these factors were not sufficient to warrant recharacterization of your undesirable discharge.

In view of the foregoing, the Board has concluded that the facts and circumstances of your case fail to show that a material error has occurred or an injustice has been suffered. Accordingly, your application must be denied. The names and votes of the Board members will be furnished upon request.

(Exhibit B at 40).

On July 17, 1981 Lord filed the instant action contending that his undesirable discharge was arbitrary and capricious and in violation of the applicable regulations and constitutional provisions. He seeks a declaration that his undesirable discharge was unlawful and requests that this court reinstate him to the Marines until discharge proceedings can be conducted in conformance with law. In addition, Lord seeks an award of back pay and privileges subject to the $10,000 limit on this court's jurisdiction. *See* 28 U.S.C. § 1346. Alternatively, Lord requests that I direct the Secretary of the

Navy to upgrade Lord's discharge to one issued under honorable conditions.

In moving for summary judgment Lord contends that the regulatory scheme in effect at the time of his discharge contemplated that the decision as to whether to discharge a person for a civilian conviction was within the Marine Corps' discretion and was to be exercised on the basis of the individual's characteristics. Similarly, Lord contends that the Marine Corps also had discretion as to the type of discharge to be issued in the event a decision to discharge was made. Lord argues that the various decisional boards that considered his discharge did not sufficiently articulate the reasons underlying their conclusion that an undesirable discharge was warranted and that, therefore, the record before this court is insufficient to allow for proper judicial review.[3]

Defendants answer these contentions by moving for summary judgment on the basis that "the fact of a conviction for arson is in and of itself sufficiently particularized to support" the decision to issue Lord an undesirable discharge. They further argue that the administrative decision that this court must review is the BCNR decision set forth in full *supra*. It argues that the BCNR review of Lord's case cured any asserted deficiencies in prior proceedings.

■■■ Lord appropriately does not dispute defendants' contention that this court is actually reviewing the BCNR decision. *Greenblatt v. Schlesinger*, slip op. No. B–74–1204 (D.Md.1976). *See, e.g., Manzo v. Lehman*, slip op. No. 81–1616 at 6 (E.D.Pa., April 30, 1982). The BCNR was established pursuant to the authority provided in 10 U.S.C. § 1552 and it is expressly empowered to determine the existence of an error or injustice and to make appropriate recommendations to the Secretary of the Navy. 10 U.S.C. § 1552(a); 32 C.F.R. § 723.2(b) (1981). Although its title implies that its

---

**3.** Lord contends that the government's failure to articulate reasons for his undesirable discharge violated both the regulations and the constitution. Lord does not distinguish between his constitutional and regulatory claims

and, as I perceive it, his constitutional and regulatory arguments are coextensive, *i.e.*, the failure to set forth reasons violated the regulations and the Marine Corps' failure to adhere to the regulations violated due process.

function is limited to making clerical changes in service records, the BCNR is authorized to grant whatever relief is necessary to make whole a wrongfully discharged serviceman. 10 U.S.C. § 1552(c); 32 C.F.R. § 723.6(e). *Terrell v. United States Army*, slip op. No. 81–1418 at 3 (E.D. Pa., Jan. 22, 1982). In essence the BCNR is the Navy's "institutional check on arbitrary action" by administrative decisionmakers in that branch of the service, *Neal v. Secretary of Navy, supra*, 639 F.2d at 1042, and deficiencies in earlier administrative proceedings can be cured by proper BCNR review. *See, e.g., Peppers v. United States Army*, 479 F.2d 79, 83 (4th Cir. 1973). *See, also, Neal v. Secretary of Navy, supra*, 639 F.2d at 1045 n.16; *Two v. United States*, 471 F.2d 287 (9th Cir. 1972), *cert. denied*, 412 U.S. 931, 93 S.Ct. 2750, 37 L.Ed.2d 160 (1973). In light of the broad remedial powers of the BCNR, "[o]nce a plaintiff has sought relief from the Correction Board, such plaintiff is bound by that board's determination unless he can meet the difficult standard of proof that the Correction Board's decision was illegal . . . ." *Sanders v. United States*, 594 F.2d 804, 811 (Ct.Cl. 1979). Because of the deference given to the BCNR, review of its decision is narrow. As Judge Bechtle has recently stated "[t]he Court's review of the actions of the Board for Correction of Naval Records is limited to determining whether there is substantial evidence on the record to support the Board's findings and whether the applicable rules were followed. In reviewing the personnel decisions of the military, the court does not sit as a supertribunal to substitute its judgment for that of the military board . . . . Rather, the court is limited to an examination of the former proceedings in order to determine whether the action that was taken was arbitrary or capricious under this standard of review." *Manzo v. Lehman, supra*, slip op. at 6, *citing Neal v. Secretary of Navy, supra*.

As noted earlier, Lord's only argument in support of his contention that the BCNR decision was arbitrary and capricious is that the BCNR failed to articulate sufficient reasons to allow this court to determine whether the BCNR properly exercised its discretion in determining that Lord's undesirable discharge was "appropriate and equitable." Implicit in Lord's argument is his contention that the decision as to whether to discharge him, and the type of discharge to issue to him were to be based on individualized facts and reasons and not solely on the basis of the fact of the conviction.

Lord correctly points out that his undesirable discharge was not required by the regulations. The regulations provide that the "Commandant of the Marine Corps, and all Marine commanders exercising general court-martial jurisdiction, *may* authorize or direct the retention in the service or the discharge of members by reason of misconduct. . . ." 32 C.F.R. § 730.67(a) (1975) (emphasis supplied). As stated, there is no dispute that Lord's arson conviction constituted misconduct under the regulations. *Id.* § 730.67(d)(3). Lord's reliance on the power of the Marines to retain a serviceman who committed acts of misconduct, however, is misplaced. When read in their entirety the regulations create a presumption that Marines convicted by civilian authorities will be issued an undesirable discharge. *See Roelofs v. Secretary of Air Force*, 628 F.2d 594, 596–598 (D.C.Cir.1980) (the court so interpreted Air Force regulations which virtually tracked the Marine Corps regulations). For example, 32 C.F.R. § 730.51(b)(9) provides that misconduct discharges will be undesirable "unless the particular circumstances in a given case warrant a general or honorable discharge."[4] Further, the regulations provide that, standing alone, a felony conviction constitutes a basis for an undesirable discharge. 32 C.F.R. § 730.51(*o*)(5). Thus, under the regulatory scheme, it is apparent that, unless the Marine Corps determines that the continued service of a convicted felon would be beneficial to the Corps, or that the facts

---

**4.** Lord does not argue that the Marine Corps' decision that convicted felons should be undesirably discharged is unconstitutional. Such an argument would be unavailing. *See Roelofs v. Secretary of Air Force*, 628 F.2d 594, 597 (D.C. Cir.1980).

and circumstances underlying the individual's conviction somehow mitigates the seriousness of the civilian conviction, an undesirable discharge from the Corps will be issued.

 Although a civilian conviction will normally lead to an undesirable discharge, the fact that the Corps has discretion to retain a convicted Marine or to issue that Marine a general or honorable discharge, makes it incumbent on the Corps to set forth reasons why it chose in a particular case not to afford a convicted Marine favorable treatment. The "umbrella principle" that administrative decisionmakers "must give sufficient indication of the grounds for its exercise of discretion" is fully applicable to the Armed Forces in their personnel decisionmaking. *Matlovich v. Secretary of the Air Force*, 591 F.2d 852, 856 (D.C.Cir.1978). *See, e.g., Neal v. Secretary of Navy, supra*, 639 F.2d at 1038. As stated by the Court of Appeals for the District of Columbia:

> The fundamental principle of reasoned explanation ... serves at least three interrelated purposes: enabling the court to give proper review to the administrative determination; helping to keep the administrative agency within proper authority and discretion, as well as helping to avoid and prevent arbitrary, discriminatory, and irrational action by the agency; and informing the aggrieved person of the grounds of the administrative action so that he can plan his course of action (including the seeking of judicial review).

The requirement that the Armed Services give reasons for a personnel decision does not, however, carry with it a requirement that the service provide "an extensive exegesis of the underlying reasoning," each time it makes a decision affecting a serviceman. Rather, the service need only provide "a sufficient explanation of the basis" upon which it acted. *Neal v. Secretary of Navy, supra*, 639 F.2d at 1038.

 Applying this standard to the BCNR decision at issue in the instant case, I conclude that that body more than adequately set forth the reasons underlying its conclusion that Lord's discharge was "appropriate and equitable." A review of the BCNR decision reveals that the Board adhered to the regulatory scheme by reviewing Lord's record to determine whether there were factors present which would overcome the regulatory presumption that those convicted of felonies by civilian authorities be issued an undesirable discharge. The BCNR correctly noted that Lord's undesirable discharge was authorized by the fact of his conviction. The BCNR did not view Lord's prior service record as supporting his continued service or an upgrading of his discharge since it specifically found that Lord was awarded nonjudicial punishment "for failure to be at appointed place for duty and disobedience of orders." The Board also considered the mitigating circumstances set forth by Lord "such as ... recruiter connivance, service record, youth and immaturity, and processing of the discharge" but found that these did not outweigh the serious nature of his civilian offense. (Exhibit B at 40). Thus the BCNR decision provides an ample explanation as to why the BCNR decided not to exercise its discretion to grant Lord the relief he sought.

The BCNR's statement that the seriousness of the offense outweighed any potential mitigating factors makes this case distinguishable from the *Matlovich* case on which Lord so heavily relies. In *Matlovich* the Correction Board gave no indication why it refused to recommend the retention of an admitted homosexual with an outstanding service record, other than to find that it did not consider retention appropriate. In contrast, in the instant case the BCNR and the NDRB expressed the opinion that Lord's arson conviction was so serious as to make an undesirable discharge appropriate and equitable.

I am satisfied that the decision not to retain Lord was not arbitrary and capricious. *See, e.g., Jackson v. United States*, 297 F.2d 939 (Ct.Cl.1962), *cert. dismissed*, 372 U.S. 950, 83 S.Ct. 947, 9 L.Ed.2d 976 (1963). Lord's crime of burning an empty trailer-home was extremely serious and the

Marine Corps' decision that it did not want to retain a person who committed such a crime is certainly justifiable. "The military has an overall interest, in terms of morale and efficiency, in insisting on a corps of servicemen who abstain from serious criminal activity." *Roelofs v. Secretary of Air Force, supra,* 628 F.2d at 598. Nor was it arbitrary and capricious for the BCNR to conclude that an undesirable discharge was appropriate in light of the seriousness of the offense. "Once the ability of the [Marine Corps] to discharge convicted individuals is recognized, there is no irregularity in the presumption that discharge under such circumstances will ordinarily be less than honorable`.... [I]t is consistent with law and lore that an 'honorable discharge' may ordinarily be withheld from a person who commits, while in the armed forces, an offense that would expose him to a penalty of more than one year's confinement." *Id.* In light of this presumption and the seriousness of Lord's arson conviction, for which he received a five to seven year prison term, I am unable to conclude that the BCNR acted in an arbitrary and capricious manner in rejecting the factors offered by Lord to mitigate the harshness of an undesirable discharge.

Because I have determined that the BCNR stated a sufficient factual basis to allow for judicial review of its decision that Lord's undesirable discharge was equitable and appropriate, and because I conclude that that decision was not arbitrary and capricious, Lord's motion for summary judgment will be denied and defendants' motion will be granted.[5]

### ORDER

This 9th day of June, 1982, it is

---

**5.** I do not underestimate the stigma imposed by an undesirable discharge from the armed services. Nor am I unsympathetic to Lord, who, from the record before me, is apparently making a sincere effort to become a productive member of society and whose efforts may be hampered by his military record. A legitimate argument can be made that the service could have weighed the mitigating factors differently

ORDERED that the Motion of plaintiff, Charles Lord, for Summary Judgment is DENIED. It is

FURTHER ORDERED that the Motion of defendants, Joseph Lehman and W. Dean Pfeiffer, for Summary Judgment is GRANTED and Judgment is entered in defendants' favor.

in the instant case. However, my function is not to substitute my views for those of the BCNR but only to determine if the BCNR exercised its discretion in accordance with law. Although I might possibly have reached a different conclusion on the facts of this case, the BCNR's decision was not arbitrary and capricious and accordingly, its decision may not be disturbed.