John P. KALISTA, Plaintiff,

v.

The SECRETARY OF the NAVY, the Board for Correction of Naval Records and the Naval Discharge Review Board, Defendants.

Civ. A. No. 82–K–1135.

United States District Court, D. Colorado.

March 29, 1983.

4. Total Hoosier sales (1,822 tires) × M & H market share (45%) × M & H gross profit per tire ($30) = $24,597.

**610**

Richard M. Borchers, Westminster, Colo., for plaintiff.

Robert N. Miller, U.S. Atty., and John Barksdale, Asst. U.S. Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

When charged and convicted by civilian authorities on several felony counts, plaintiff was given an undesirable discharge from the United States Marine Corps. In this action plaintiff seeks to have that discharge upgraded under this court's equitable and mandamus powers. Plaintiff is not seeking reinstatement into the Marine Corps. Subject matter jurisdiction rests in Title 28 U.S.C. § 1331 and 1361.

At the time of arrest by civilian authorities in the State of North Carolina, plaintiff was a Lance Corporal in the United States Marine Corps, pay grade E–3, stationed as an aviation ordnance man at the U.S. Marine Corps Air Station, Cherry Point, North Carolina. At the time of trial, plaintiff had served 2 years, 7 months and 17 days in the Corps with an unblemished record. Plaintiff was charged and pled guilty to five counts of breaking and entering a motor vehicle with intent to commit larceny and one count of breaking and entering a dwell-ing with intent to commit larceny. These charges arose out of off-duty, non-service connected actions of plaintiff. He was sentenced, as a youth offender, to serve not more than four years by a North Carolina state court. Upon sentencing, plaintiff's commanding officer began discharge proceedings which culminated in the undesirable discharge.[1]

Plaintiff was advised of the discharge proceedings by his commanding officer in a letter of March 19, 1977. Plaintiff responded on March 25, 1977 that he did not understand what was going on and desired a hearing. A Marine legal officer was appointed to represent him at the discharge proceedings which commenced April 22, 1977. The administrative proceedings were held August 5, 1977 before a three-member administrative board. Plaintiff's attorney was present, but due to his civilian confinement, plaintiff was not at the hearing. No transcript of the hearing was made, but there is a written record. Plaintiff objects to this record charging that it is so scant as to be unclear about who was called to testify against plaintiff, what evidence was presented in his favor, what, if anything, his appointed counsel did on his behalf, and what factors were considered by the board in granting the undesirable discharge. Plaintiff protests that despite the fact that he was only approximately 110 miles from Cherry Point in the state correctional facility, and his representations that he had the permission of the confining authorities to leave for the purposes of attending the hearing, no attempt was made either to secure his presence at the hearing or even to obtain an affidavit of his side of the story or any statements in mitigation.

1. Naval Regulations, published in Bureau of Naval Personnel Manual, Part C–10311, prescribe five types of discharges: (1) honorable, (2) general (under honorable conditions), (3) undesirable or a discharge "under other than honorable conditions," (4) bad conduct, and (5) dishonorable. The vast majority of discharges from the armed forces are honorable. Anything less than an honorable discharge stigmatizes the recipient and is punitive in nature. *Bland v. Connally,* 110 U.S.App.D.C. 375, 376

n. 1, 293 F.2d 852, 853; *Van Bourg v. Nitze,* 388 F.2d 557 (D.C.1967).

*See,* 32 C.F.R. 724.109 lists only three discharge characterizations: (1) honorable, (2) under honorable conditions (also termed general discharge) and (3) under other than honorable conditions (formerly termed undesirable discharge).

and 32 C.F.R. 724.111 listing two punitive discharges: (1) bad conduct and (2) dishonorable.

Upon his release from confinement,[2] plaintiff petitioned the Naval Discharge Review Board to upgrade his discharge to an honorable discharge. This relief was denied June 29, 1981. Plaintiff then petitioned the Board for Corrections of Naval Records for an upgrade. This petition was also denied on November 20, 1981. Plaintiff has exhausted all his administrative remedies.[3]

Plaintiff bases his motion for summary judgment under Rule 56, F.R.Civ.P. on (1) defendants' failure to justify the granting of the undesirable discharge; (2) denial of effective assistance of counsel; and (3) denial of a fair hearing because no attempt was made to obtain his presence for the hearing all in violation of his constitutional rights. The government has filed a cross-motion for summary judgment arguing that plaintiff has received all the process and rights due him, that this attack against the discharge board is misdirected, and that the decision of the Board for Corrections of Naval Records must be upheld because the board did not act arbitrarily and capriciously. Both parties agree that there are no genuine issues of material fact in dispute.

■ The Board for Corrections of Naval Records was statutorily created by Title 10 U.S.C. § 1552. *See,* 32 C.F.R. 723.2. The Naval Discharge Review Board is also a creature of statute, Title 10 U.S.C. § 1553.[4] The legislation was enacted to avoid a large number of private bills in congress for formerly discharged servicemen seeking to have the nature and character of their discharge corrected or upgraded. *See, Sims v. Fox,* 492 F.2d 1088 (5th Cir.1974); *Ogden v. Zuckert,* 298 F.2d 312, 111 U.S.App.D.C. 398 (1961); 40 Op.Atty.Gen. 504 (1947); 41 Op. Atty.Gen. March 20 (1952). The legislation was remedial in nature and should be liberally construed. *Oleson v. U.S.,* 172 Ct.Cl. 9 (1965). The purpose of the boards is to review the type and nature of discharge in order to correct errors or remove injustices.

Subject to review by the Secretary of the Navy, the review board may "change a discharge or dismissal, or issue a new discharge, to reflect its findings." 10 U.S.C. § 1553(b). The regulations provide that the jurisdiction of the review board includes all separations from the naval service, except discharge or dismissal resulting from a general court-martial, revocation of discharge or dismissal, reinstatement into the service or recall of a former member to active status. 32 C.F.R. 724.303. There is no challenge that plaintiff here has requested review within the fifteen (15) year statutory period after the date of discharge or dismissal. 10 U.S.C. § 1553.

## SCOPE OF REVIEW

Plaintiff asks this court to upgrade his discharge based on denial of certain constitutional rights at the administrative proceeding held August 5, 1977. The government maintains that plaintiff's request to review those proceedings is misdirected and this court is limited to review of the administrative record only. Defendants further contend that because the correction board's findings are final and conclusive, this court may overturn, set them aside or change them only if the actions of the board were arbitrary or capricious.

■ It is well established that military decisions and actions are reviewable by the judiciary to determine whether the secretary has acted within the sphere of his statutory and constitutional authority. *Harmon v. Brucker,* 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958); *Bland v. Connally,* 110 U.S.App.D.C. 375, 293 F.2d 852 (D.C. Cir.1961). Judge Hastie[5] in *Ashe v. McNamara,* 355 F.2d 277, 280–81 (5th Cir.1965) did an exhaustive analysis of the legislative history behind section 207 of the Legislative Reorganization Act of 1946, 60 Stat. 837, 10 U.S.C. § 1552 before concluding that the "final and conclusive" language of the stat-

---

2. Plaintiff served eighteen (18) months.

3. I have discussed at length the exhaustion of remedies requirement in *Kaiser v. Secretary of Navy,* 542 F.Supp. 1263, 1265–66 (1982).

4. Plaintiff incorrectly cited this section in his complaint as 10 U.S.C. § 1551.

5. Sitting by designation.

ute "was not intended to preclude any otherwise proper judicial review of departmental action upon a petition to change the type of discharge." *Id.*

■ Generally, there is a tradition of judicial reluctance to interfere with the military establishment.

But in judgments requiring military expertise and involving military discretion within unique professional fields this long-established view found apt expression in *Orloff v. Willoughby,* 345 U.S. 83, 94–95, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953) where the Supreme Court, after noting that "judges are not given the task of running the Army," stated that "[t]he responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates." And further "The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to interfere in judicial matters."

*Horn v. Schlesinger,* 514 F.2d 549, 551 (8th Cir.1975). The actions and procedures of the correction board, however, are subject to judicial reversal if they are arbitrary, capricious, unsupported by substantial evidence or erroneous in law. *Smith v. McNamara,* 395 F.2d 896 (10th Cir.1968), *cert. denied,* 394 U.S. 934, 89 S.Ct. 1211, 22 L.Ed.2d 466 *reh. denied,* 394 U.S. 995, 89 S.Ct. 1477, 22 L.Ed.2d 773; *Sanford v. U.S.,* 399 F.2d 693, 694 (9th Cir.1968); *Hoorwitz v. Resor,* 329 F.Supp. 1050, 1051 (D.Conn. 1970), *aff'd per curiam,* 445 F.2d 1407 (2nd Cir.1971); *Esgate v. U.S.,* 186 Ct.Cl. 207 (1968), *cert. denied,* 395 U.S. 913, 89 S.Ct. 1759, 23 L.Ed.2d 226 (1969); *Denton v. Seamans,* 315 F.Supp. 279 (N.D.Cal.1970), *aff'd* 483 F.2d 21 (9th Cir.1973) *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974). Defendants have correctly identified the arbitrary and capricious test as that standard properly applicable in review

of the administrative proceedings, however, their argument that my review is limited only to the record of the corrections board is rejected.

## ADEQUACY OF THE RECORD

Plaintiff's motion for summary judgment is based in part on his allegation that defendants failed to justify the granting of the undesirable discharge. No transcript was made of plaintiff's discharge hearing on August 5, 1977, however, a written record was made and the administrative record has been provided. I have reviewed the record.

■ Naval regulations require a hearing where a member is recommended for discharge under other than honorable conditions. Manual § 6025. The requirements of the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.* apply to these proceedings. *Roelofs v. Secretary of Air Force,* 628 F.2d 594 (D.C.Cir.1980). Under the APA, the agency must give written notice of the hearing and must detail its findings and the underlying reasons in support of those findings. Although the written record and findings of the administrative discharge board are not as complete as plaintiff would like them to be, I find that they are sufficient.

■ Although the record is a "fill-in-the-blank" type, it does show what evidence and testimony was considered by the board, the recommendations received, the conclusions of the board and the only justification for its decision: *viz.,* the felony conviction by civilian authorities.

Although a civilian conviction will normally lead to an undesirable discharge, the fact that the Corps has discretion to retain a convicted Marine or to issue that Marine a general or honorable discharge, makes it incumbent on the Corps to set forth reasons why it chose in a particular case not to afford a convicted Marine favorable treatment. The "umbrella principle" that administrative decision-makers "must give sufficient indication of the grounds for its exercise of discretion" is fully applicable to the Armed

Forces in their personal decision-making. *Matlovich v. Secretary of the Air Force,* 591 F.2d 852, 856 (D.C.Cir.1978). *See, e.g. Neal v. Secretary of Navy,* [639 F.2d 1029 (3rd Cir.1981)]

\* \* \* \* \* \*

The requirement that the Armed Services give reasons for a personnel decision does not, however, carry with it a requirement that the service provide "an extensive exegesis of the underlying reasoning," each time it makes a decision affecting a service man. Rather, the service need only provide "a sufficient explanation of the basis" upon which it acted. *Neal v. Secretary of Navy, supra,* 639 F.2d at 1038.

*Lord v. Lehman,* 540 F.Supp. 125, 130 (E.D. Pa.1982). The contention that the record of the administrative discharge proceeding is inadequate is rejected.

■ Plaintiff has also alleged that the discharge board acted improperly and unconstitutionally when it based the undesirable discharge only on the civilian conviction "absent some showing of the misconduct affecting the military service" and seeks upgrade of the discharge because the stigma will follow plaintiff throughout his life affecting him psychologically, emotionally and economically.

■ It is settled that the type of discharge to be issued is to be determined solely by the serviceman's military record. *Harmon v. Brucker, supra.* The pertinent regulation provides that a Marine may be discharged by reason of misconduct if he is convicted by civil authorities

> or action taken which is tantamount to a finding of guilty of an offense for which the maximum penalty under the Uniform Code of Military Justice is death or confinement in excess of one year; or which involves moral turpitude; or where the offender is adjudged a juvenile delinquent, wayward minor, or youthful offender or is placed on probation or punishment in any way as the result of an offense involving moral turpitude . . .

Marine Corps Separation and Retirement Manual § 6018(2)(c).

Plaintiff's enlistment papers [6] show that the military obligation undertaken by plaintiff was for a total of six years. At the time of his arrest, he had served just over two and one-half years of this obligation. Plaintiff now argues that there has been no showing by the service that his arrest and conviction effected the Marines.

As the District of Columbia Circuit said in *Roelofs v. Secretary of Air Force, supra,* 628 F.2d at 598:

> The military has an overall interest, in terms of morale and efficiency, in insisting on a corps of servicemen who abstain from serious criminal activity. In a broad sense, the military does not exceed its province when it in effect instructs its members that their overall obligation as servicemen requires them to abide by the laws of the land.

As in the instant action, Roelofs was convicted by a civilian court of felony charge while on active duty in the military service. Unlike the instant action, Roelofs' sentence was stayed to permit him to complete his term of duty with the Air Force. Roelofs was issued an undesirable discharge based on the felony conviction. In upholding the Air Force's right to discharge a serviceman other than honorably without a requirement that the service show that the underlying offense is "'service-related' in some sense," the court held that the military

> may reasonably and properly look beyond the performance by a particular serviceman of his daily chores, and it may take into account the impact of his "outside" actions in diminishing the overall effectiveness of the military. In some instances, the impact may be relatively direct— as when crime leads to detention outside military control, or to subjection to control by civil authorities.

There is no question that a sentence of up to four years as imposed by the North Carolina courts on plaintiff would have direct effect on the Marine Corps. Plaintiff's con-

---

**6.** Statement of Understanding, dated November 18, 1974.

tention that there has not been adequate showing of the impact on the service is rejected and his motion for summary judgment on this ground is denied.

Plaintiff also argues that the undesirable discharge stigmatizes him. An undesirable discharge or any other discharge other than honorable unquestionably *does* stigmatize an individual,[7] but the conviction for six felony charges and eighteen months in a North Carolina correctional facility also stigmatize an individual.

> Again, citing *Roelofs, supra* at 598–99, The incremental stigma that results from an undesirable discharge is of a different order from [a general discharge]. Regulations indicating that a good record would warrant either an honorable or general discharge create the clear impression that an undesirable discharge indicates the *absence* of a good record of performance in the service. This is in (sic) adverse finding, over and above the stigma of the felony, because it is equivalent to a finding the serviceman has performed inadequately on the job. The presumption that an undesirable discharge will result from a civilian conviction is warranted if it results in deficiency in performance of military duties or has a direct impact upon military service. (footnote omitted)

Plaintiff concedes that the Department of Defense regulations in force at the time of his discharge directed an undesirable discharge.

> Once the ability of the [Marine Corps] to discharge convicted individuals is recognized, there is no irregularity in the presumption that discharge under such circumstances will ordinarily be less than honorable... [I]t is consistent with law and lore than an "honorable discharge" may ordinarily be withheld from a person who commits, while in the armed forces, an offense that would expose him to penalty of more than one year's confinement.

*Lord v. Lehman, supra* at 131.

Plaintiff's military record prior to his *conviction* shows that he had not been disciplined or convicted either civilly or militarily. His record showed high ratings and good work performance and the testimony at his discharge hearing recounted these high marks. The undesirable discharge does not effect plaintiff in any greater degree than do the state felony convictions. I have already determined that the civil conviction had a direct impact on plaintiff's military performance. Therefore, plaintiff's motion for summary judgment because defendants based the undesirable discharge on the civil conviction and the stigma this places on him is denied. ·

## EFFECTIVE ASSISTANCE OF COUNSEL

Plaintiff was appointed counsel to represent him at his administrative discharge hearing. He argues that the representation rendered by this appointed counsel was unconstitutionally inadequate and improper because: (1) counsel never went to see his client even though plaintiff was incarcerated only 110 miles away;[8] (2) no attempt was made to obtain plaintiff's presence at the hearing; (3) counsel did not attempt to obtain an affidavit from plaintiff in lieu of his appearance; (4) the written record does not indicate that counsel made any challenges to the proceedings, the underlying regulations or to the presumption for awarding an undesirable discharge; (5) counsel did nothing to obtain evidence or testimony to explain what had happened regarding the civil conviction; and, (6) counsel did nothing to protect plaintiff's rights after the discharge board rendered

---

7. See footnote 1.

8. The affidavit of Russell B. Wiseman, plaintiff's appointed counsel in the discharge proceeding states otherwise. Wiseman specifically remembers travelling to the correctional facility where plaintiff was incarcerated and conferring with him regarding his case. I do not find it improbable that the judge advocate could not recall the specifics of his conversation with plaintiff. The affidavit further states that there had been no indication by plaintiff nor the civilian authorities that plaintiff could be released from confinement to attend the discharge hearing.

its decision; no independent examination of the case nor disapproval of the undesirable discharge was sought.

The Marine Corps Separation and Retirement Manual provides the serviceman with the right to appear with or without counsel at the administrative discharge hearing "[s]ubject to his availability (i.e. not in civil confinement or on unauthorized absence)". In the serviceman's absence, he may be represented at the hearing by his counsel. § 6024(7)(a). Plaintiff admits that at the time of his hearing he was in the custody of and confined by the State of North Carolina but contends that holding the hearing without him and not even attempting to secure his presence at the hearing is a denial of his constitutional rights.

 Naval regulations require a hearing before an administrative discharge board when a serviceman is recommended for discharge under other than honorable conditions, however, the discharge board

> functions as an administrative, rather than a judicial body... There is a sharp and distinct delineation between the administrative process which has as its purpose the administrative elimination of unsuitable, unfit or unqualified service members and the judicial process, the purpose of which is to establish the guilt or innocence of a member accused of a crime and to administer punishment when appropriate.

 I have previously determined that the written record of the discharge board reflects that witnesses and evidence were presented on plaintiff's behalf and any contention to the contrary is rejected. Accusations of ineffective assistance of counsel must be measured by the "farce and mockery of justice test" of *Diggs v. Welch*, 80 U.S.App.D.C. 5, 148 F.2d 667, *cert. denied* 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002 (1945) or the standard of *Beasley v. United States*, 491 F.2d 687 (6th Circuit, 1974) which held that the assistance of counsel required under the Sixth Amendment

> is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. (citations omitted)

*See Baker v. Schlesinger*, 523 F.2d 1031, 1035 (6th Cir.1975), *cert. denied*, 424 U.S. 972, 96 S.Ct. 1473, 47 L.Ed.2d 741, *reh. denied* 425 U.S. 966, 96 S.Ct. 1752, 48 L.Ed.2d 211.

> Article III courts must assess the case in light of the deference that should be accorded the judgments of the carefully designed military justice system established by Congress.

*Schlesinger v. Councilman*, 420 U.S. 738, 753, 95 S.Ct. 1300, 1310, 43 L.Ed.2d 591 (1975). I find nothing patently unfair in the Naval regulations' assumption that a serviceman is unavailable if he is in civil confinement. The discharge board makes no finding of guilt which would require a higher standard. The record reflects that plaintiff's position was adequately advanced by his appointed counsel and that evidence, testimony and argument was presented on his behalf. Neither the "farce or mockery" nor the *Beasley* tests have been met. Plaintiff's contention that he was denied effective assistance of counsel and his motion for summary judgment on that ground is denied.

### REVIEW OF THE CORRECTION BOARD'S DECISION

 There is a strong, but rebuttable, presumption that military administrators discharge their duties correctly, lawfully, and in good faith. *Sanders v. U.S.*, 594 F.2d 804, 219 Ct.Cl. 285 (1979); *Savio v. U.S.*, 213 Ct.Cl. 737 (1977); 32 C.F.R. 724.902. Congress had entrusted primary responsibility for record corrections to the service secretaries acting through correction boards. They are granted great discretion in making their decisions. 10 U.S.C. § 1552. While it is arguable that administrative interpretations do not carry the force of law, they are entitled to substantial weight by reviewing courts, *Skidmore v. Swift and Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944); *Brennan v. South Davis*

*Community Hospital,* 538 F.2d 859 (10th Cir.1976); *Dolan v. Project Construction Co.,* 558 F.Supp. 1308 (D.Colo.1983) (Kane, J.), and the judgment of the court should not be substituted for that of the board. *Snell v. U.S.,* 168 Ct.Cl. 219, 227 (1964). The decision of the board will not be overturned unless the proponent can meet the arbitrary and capricious standard.

 A serviceman does not have a contractual right to remain in the service until the expiration of his enlistment term, however, an administrative discharge issued prior to the expiration of the enlistment term is void if it exceeds applicable statutory authority, or ignores pertinent procedural regulations or violates minimum concepts of basic fairness. *Birt v. United States,* 180 Ct.Cl. 910, 913 (1967); *Keef v. United States,* 185 Ct.Cl. 454 (1968); *Waller v. United States,* 198 Ct.Cl. 908, 461 F.2d 1273 (1972). Here I have ruled that neither the statutory authority, the Marine regulations nor minimum concepts of basic fairness have been exceeded. Plaintiff has failed to prove that the corrections board or the review board have acted arbitrarily or capriciously and any allegations that they have so acted are rejected.

 Proceedings before the review board are matters of legislative grace and, therefore, do not have to provide the same standards of "fairness" required at the time the discharge occurs. *Bland v. Connally, supra; Clackum v. U.S.,* 148 Ct.Cl. 404, 295 F.2d 226 (1960); *cf. Greene v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). There is no statutory right to a hearing before the boards. *Harris v. U.S.,* 177 Ct.Cl. 538 (1966); *Merson v. U.S.,* 173 Ct.Cl. 92 (1966). Plaintiff here received a full and fair administrative hearing before the discharge board, a full and fair review without hearing before the review board and a full and fair hearing and review by the corrections board.[9] Plaintiff has failed to prove and I do not find that the correction board or the review board have acted arbitrarily or capriciously, and any allegations that they have so acted are rejected.

It is therefore, ORDERED that summary judgment shall be entered in favor of defendants and against plaintiff. The undesirable discharge will not be set aside or upgraded. Each party shall pay his or its own costs.

---

9. The tape of the proceedings held before the corrections board reflects plaintiff's satisfaction with his representation and process before the board.