Mollie M. BEEBEE, Executrix of the
Estate of Francis C. Beebee,
Deceased

v.

UNITED STATES.

No. 330–59.

United States Court of Claims.

June 7, 1961.

Guy Emery, Washington, D. C., for
plaintiff.

Arthur E. Fay, Washington, D. C., with whom was William H. Orrick, Jr., Asst. Atty. Gen., for defendant.

DURFEE, Judge.

The plaintiff, Mollie M. Beebee, brings this action as the executrix of the estate of the late Francis C. Beebee, hereinafter referred to as the decedent.

The decedent was employed as a civilian clerk in the Subsistence Department of the War Department from 1901 to 1912. In 1912 decedent's official title was changed to "clerk, Quartermaster Corps" when the Subsistence Department was merged with the Quartermaster Department and other units as the "Quartermaster Corps." He served in this capacity until January 17, 1917, when he was appointed as a "field clerk, Quartermaster Corps." He subsequently served as a commissioned officer until his retirement in 1942 for physical disability as a lieutenant colonel. After October 1, 1949, decedent was paid the retired pay of a lieutenant colonel with 25 years service, pursuant to Title IV, Career Compensation Act of 1949, 63 Stat. 802, 37 U.S.C.A. § 271 et seq. Decedent has been given 25 years credit for active service as a "field clerk, Quartermaster Corps," and later as a commissioned officer for the period from January 17, 1917, until his retirement on January 31, 1942. Plaintiff brings this action to recover for the difference between such pay and the retired pay of an officer of like grade with over 30 years service.

Plaintiff's contention is that decedent's service as a clerk in the Subsistence and Quartermaster Departments between 1901 and 1917 was creditable as "active service," in the computation of his retired pay, within the meaning of Section 412 of the Career Compensation Act of 1949, supra.

In 1934 the decedent, together with eighteen others similarly situated, petitioned this court, seeking increased pay based on longevity credit claimed for service as clerks of the Quartermaster Corps, prior to the effective date of their appointments as "field clerks, Quarter-master Corps" pursuant to the Act of August 29, 1916, 39 Stat. 619, 625. Each of the petitioners asserted that his prior employment as a clerk of the Quartermaster Corps was service *in the Army*, in view of the language in Section 11 of the Act of May 18, 1920, 41 Stat. 601, 604, which provided, in pertinent part, as follows:

"*   *   * hereafter longevity pay for officers in the Army, Navy, Marine Corps, Coast Guard, Public Health Service, and Coast and Geodetic Survey shall be based on the total of all service in any or all of said services."

The case of petitioner Scholl v. United States, 82 Ct.Cl. 606, was tried first, and a motion was filed to suspend proceedings in the Beebee action and the other related cases for the reason that their determination would be controlled by the Scholl case.

The court in Scholl v. United States, 82 Ct.Cl. 606, held that Scholl's service as a "clerk" in the Quartermaster Department from 1902 up to the time of his appointment in 1917 as a "field clerk" of the Quartermaster Corps could not be counted as service in the Army under Section 11 of the Act of May 18, 1920, supra.

"*   *   * there can be no doubt that eligibility for the position was not dependent upon either previous or existing service in the Army, and by accepting the position he became a civilian employee under civil service classification, independent of regulations having to do with the services of an enlisted man or an officer in the Army." 82 Ct.Cl. 614.

Upon denial of certiorari in the Scholl case, 299 U.S. 592, 57 S.Ct. 115, 81 L.Ed. 436, the petitions of the decedent and other similarly situated plaintiffs were dismissed on defendant's motion made in open court on December 7, 1936.

Plaintiff's present claim is under Section 412 of the Career Compensation Act of 1949, supra. The purpose of that Act by its title, was "to provide pay, allow-

ances, and physical retirement for members" of the armed services. The term "members" as defined by Sec. 102(b) of the Act, 37 U.S.C.A. § 231(b), means officers, warrant officers, and enlisted men, including retired persons, of the uniformed services, unless otherwise qualified. By Sec. 102(a) the term "uniformed services" is interpreted to mean the various components of the armed services, the Public Health Service and the Coast and Geodetic Survey, unless otherwise qualified. The term "active service," is interpreted by Sec. 412 of the Act in the following fashion:

"For the purposes of this title, the term 'active service' shall be interpreted to mean (1) for members of the Regular components of the uniformed services and for those members, former members, and persons referred to in section 411(1), (3), and (4), all service as a member of the uniformed services, * * *, or as an Army field clerk or as a field clerk, Army Quartermaster Corps, while on the active list or on active duty * * *."

There is no material difference in the facts found by the court as to Scholl and the facts as alleged in the present petition. Both Beebee and Scholl were in the Quartermaster (formerly Subsistence) Department of the Army from 1901 and 1902, respectively, until 1917. During this period, they were officially designated as "clerks." Both spent a large part of this period in service with the Quartermaster Department in the Philippines. Both were appointed "field clerks, Quartermaster Corps" on January 17, 1917.

The Career Compensation Act of 1949, supra, upon which petitioner now relies, requires that longevity credit for retired pay be based upon "active service" as therein defined. Petitioner has been given full longevity credit for his service as a "field clerk, Army Quartermaster Corps" from the date of his appointment thereto on January 17, 1917. The question that remains is whether he was in service as "a member of the uniformed services," as defined in the Act, while serving as a civilian clerk in the Quartermaster Department from 1901 to 1917. We can see no distinction in the meaning of the 1949 statute and the 1920 statute, under which decedent's former claim was dismissed, which can be helpful to the petitioner. If anything, "active service" as "a member of the uniformed services" as required in the 1949 statute is more restrictive than "the total of all service in any or all of said services" as required under the 1920 statute construed in Scholl.

However, petitioner has advanced three points of argument which were not specifically dealt with in Scholl. The first point is that decedent's service was actual service in the Army because he was required to take an oath of office and because he acted under military orders and performed duties with the Army in the supply of troops in the Philippines and in the field within the United States.

The oath of office taken by the decedent provided:

"I . . . . . . . . . do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true · faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God."

Section 1757 of the Revised Statutes required that this oath be taken by any person elected or appointed to any office of honor or trust under the Government of the United States, either civil or military. We do not consider that the oath of office administered to decedent was related to active military service.

The Scholl opinion points out that *all* positions in the civilian service of the War Department in the Philippines were classified under civil service rules by

order of the President in 1904 and that Scholl was so classified. We may therefore conclude that decedent, also a civilian clerk with the Quartermaster Department in the Philippines, was so classified. As the court said in Scholl, 82 Ct.Cl. at page 611:

"In other words, his tenure of office, his eligibility for transfer to competitive positions in the United States, and the subject matter of his removal from office were all determinable under Civil Service and not Army laws or regulations."

■ Plaintiff also argues that decedent was amenable to court-martial jurisdiction during part of the period, because of the 1916 revision of the Articles of War, 39 Stat. 619, 651. This, plaintiff asserts, may be a test of whether a person occupies a military or quasi-military status. The fact that decedent was one of the "retainers to the camp" or "accompanying or serving with the armies of the United States" and therefore subject to military law while in the Philippines may establish a quasi-military status, as petitioner proposes, but this is not active service as a member of the uniformed services, as required by the Career Compensation Act.

Plaintiff also contends that it was not the intent of Congress that credit for this service should be denied decedent, and points to Congressional discussion of the Act of April 27, 1926, 44 Stat. 328, which provided for the appointment of Army field clerks and field clerks, Quartermaster Corps, to warrant officer grades, United States Army. Plaintiff then states in her brief:

"Comparing the facts of decedent's case with the history of the field clerks as related by the War Department's representative, above, the reason for decedent's failure to receive credit for his service as a field clerk, payment for which is sought herein, becomes clear." (Emphasis supplied.)

Decedent was given full longevity credit for his service as a "field clerk" from the date of his appointment on January 17, 1917. Prior to that time, he was never a "field clerk;" his official designation was as a civilian "clerk." It is clear that "clerk" and "field clerk" each have a separate and distinct classification under the law applicable to this case, and cannot be used interchangeably or indiscriminately, and that Congress was not considering civilian clerks in discussing the history of field clerks in the Army or Quartermaster Corps at the time of enactment of the Act of April 27, 1926, supra.

We conclude that the service of the decedent, Francis C. Beebee as a civilian clerk with the Subsistence Department at Large, War Department and later as a civilian clerk with the Quartermaster Department, for the period September 3, 1901, to January 17, 1917, when he was designated a field clerk, Quartermaster Corps, was not active service within the meaning of Section 412 of the Career Compensation Act of 1949. This period of time therefore, cannot be considered in his total period of active service for computation of retired pay for disability.

Plaintiff's motion for summary judgment is denied, and defendant's motion for judgment on the pleadings is granted. Plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN, and WHITAKER, Judges, concur.