**UNITED STATES of America ex rel. John J. CUFF, Jr.**

v.

**Colonel R. J. SPRITZEN, United States Marine Corps, Commanding Officer, U. S. Marine Barracks, U. S. Naval Base, Philadelphia, Pa.**

**Misc. No. 3411.**

United States District Court
E. D. Pennsylvania.

Jan. 20, 1967.

John J. McCarty, Philadelphia, Pa., for relator.

Drew J. T. O'Keefe, U. S. Atty., James C. Lightfoot, Asst. U. S. Atty., Philadelphia, Pa., for respondent.

## OPINION

KRAFT, District Judge.

The petitioner is a United States Marine Corps Corporal whose four-year contract of enlistment was due to expire during November 1966. Shortly before the petitioner would ordinarily have completed his term of service, he was informed that he was required to serve an additional 463 days to make up time which he had spent in a naval hospital, recuperating from injuries sustained in an automobile accident which was investigated by the Judge Advocate General of the Navy, who concluded the accident was the result of petitioner's own *reckless, wanton* negligence.

The accident in question occurred on May 31, 1965, on a rural road, 5 miles east of Tunkhannock, Wyoming County, Pennsylvania. The petitioner, with five passengers, was returning from a day of swimming when his car, rounding a curve, left the highway, sheared a telephone pole and plunged into an adjacent creek.

After a brief confinement in the Scranton General Hospital the petitioner was transferred to the Philadelphia Naval Hospital. On June 21, 1965, he was interviewed there by Captain J. A. Freeman, United States Marine Corps, who was investigating the accident, in accordance with Chapter VIII of the Manual of the Judge Advocate General (Manual). On this date the petitioner

signed a form expressing his *desire,* inter alia, to be represented by counsel, to participate in the investigation by being present during the proceedings, to testify, to introduce evidence, to cross-examine witnesses and to make an argument at the conclusion of the presentation of evidence. He indicated, by an interlineation at the bottom of the form, that he did not desire to make a statement at that time. These rights were available to the petitioner, as provided in the Manual. §§ 0301–0307 of Chapter III.

This interview became part of an investigative report compiled by Captain Freeman, which also includes a copy of the accident report filed by the Pennsylvania State Police and several statements taken from passengers in the petitioner's vehicle, who were interviewed by Captain Freeman.

On July 19, 1965, the petitioner signed a statement, which recited that he was permitted to examine Captain Freeman's report of July 6, 1965, concerning his injuries and was advised of his right to consult counsel. He made no requests and again declined to make any further statement.

The Judge Advocate General determined from the report submitted by Captain Freeman that the petitioner's injuries occurred through his "misconduct not in line of duty." This finding resulted in the requirement that petitioner serve an additional 463 days.

The petitioner thereupon engaged private counsel, who sought to have the Navy reverse its decision. His efforts, which included a letter request to the Secretary of the Navy were fruitless. Thereafter, the petitioner filed the instant petition for habeas corpus alleging that he was being illegally detained in the Marine Corps beyond the expiration date of his enlistment. He contends that the Navy's finding of misconduct was illegal, because the petitioner was not accorded his right to counsel nor his other rights as a party to the investigation as set forth in the Manual.

The respondent has moved to dismiss the petition on the ground that the petitioner has failed to exhaust his administrative remedies, which include a petition to the Board for the Correction of Naval Records under 10 U.S.C.A. § 1552. Respondent has filed an alternative motion for summary judgment alleging that no genuine issue of fact exists and that the administrative record contains "substantial evidence" to support the decision of the Secretary of the Navy. Hearing was held December 12, 1966, at which testimony was taken and argument had on the motions.

*In limine,* we find that the Court has jurisdiction, which, in its discretion, it may decline to exercise " * * * pending * * * [the petitioner's] pursuit of relief at the hands of the Secretary acting through the Board * * *." Ogden v. Zuckert, 111 U.S.App.D.C. 398, 298 F.2d 312, 317 (1961). Resort to the Board is a permissive remedy, since the Board is designed to *assist* the Secretary in correcting errors and injustices in military records. However, it is the *Secretary's* decision which is regarded as the final reviewable administrative decision preceding judicial review. Ogden v. Zuckert, id., 314–316. For reasons hereinafter stated, we believe that justice will be better served if we remand the petitioner to the Board and retain jurisdiction pending the outcome of that proceeding.

Contrary to the respondent's argument upon his motion for summary judgment, we perceive several issues of fact which are of substantial importance. This matter is not merely the review of an administrative decision, but as well a civil action seeking *equitable relief* by means of the Great Writ.

Under § 0304 of the Manual, the petitioner was entitled to his own counsel or " * * * military counsel appointed by the convening authority." The petitioner specifically made known his "desire" to be represented by counsel on June 21, 1965. The investigation nonetheless proceeded *ex parte* and the report was compiled without participation by counsel acting on behalf of the petitioner, who was confined to the hospital.

In fact, three statements, contained in the report and taken from passengers in the petitioner's vehicle, are dated June 8, 1965, thirteen days before the investigator inquired of the petitioner concerning his "desire" to be represented, to cross-examine witnesses and to be present during the proceedings.

One of these statements, attributed to Donald Stuart, a passenger in the rear seat of the car, contained allegations that the petitioner was travelling at a speed estimated to be 60 to 70 miles per hour and that, on several bends in the road, the petitioner's car went "slightly" off the road. This statement was quite evidently regarded as having significant probative value, since the Judge Advocate General, in his reply to plaintiff's counsel, dated November 7, 1966, refers to "testimony" of two disinterested hitch-hikers who were picked up by the petitioner before the accident who claimed that the petitioner " * * * was proceeding at the speed of seventy miles per hour both prior to and at the time of the accident."

From our independent examination of the report, such "testimony" could only be the statement of Donald Stuart and the statements of Thomas Dymond and Daniel McGuigan as reported in the police report, who also purportedly stated that the petitioner was driving his car at a speed of 60 to 70 miles per hour.

However, possible inconsistencies appear between the May 31 statements attributed to Stuart and McGuigan in the police report and their respective later statements of June 8, 1965. In the police report Stuart (Stewart) is reported to have said: "About three or four minutes after being picked up the accident happened. It happened so fast; *I can't remember what happened next.*" (emphasis ours)

According to the police report McGuigan said: "Every bend we came to we slid around. *We were going about (60)*

*miles per hour.*" In McGuigan's statement of June 8, 1965 he stated: "I did not see the speedometer at any time either prior or during the time of the accident. *I therefore have no idea of the speed at which the automobile was going at the time of the accident.*" (emphasis ours)

Under § 0304(d) *"Failure to accord rights*—Failure to accord rights of a party to a person whose conduct becomes subject to inquiry may preclude use of the record of proceedings as evidence." The present record does not disclose why the June 8 statements were taken *before* the petitioner was asked whether he desired to be represented and to cross-examine witnesses. Whether or how the apparent inconsistencies contained in the statements were reconciled by the investigating officer is not known, since we find no expression of opinion by Captain Freeman among the papers comprising his report and denominated as Respondent's Exhibit #1.

The present state of the record is most unsatisfactory and leads us to conclude that a plenary hearing before the Board, with the petitioner represented by counsel, is necessary to provide the Court and all parties in interest with an adequate record of this entire matter.

Accordingly, we enter the following

## ORDER

Now, this 20th day of January, 1967, it is ordered that

(1) the respondent's motions to dismiss and for summary judgment be, and they are, denied;

(2) the Court has jurisdiction of this petition which it declines to exercise at this time and the petitioner is remanded to the Board for the Correction of Naval Records under 10 U.S.C.A. § 1552;

(3) jurisdiction be, and it is, retained by the Court, pending completion of the proceedings before the Board.