**Robert S. MOZUR**

v.

**Verne ORR, Secretary of the Air Force.**

**Civ. A. No. 83–1204.**

United States District Court,
E.D. Pennsylvania.

Jan. 15, 1985.

Eric J. Fischer, Community Legal Services, Philadelphia, Pa., for plaintiff.

Rachel Shao, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## OPINION

LOUIS H. POLLAK, District Judge.

Plaintiff joined the Army Air Corps (currently the Air Force) in January, 1943. The Report of Physical Examination and Induction dated December 22, 1942 notes no serious medical problems and states that plaintiff was "physically and mentally qualified for general military service." Military Personnel Records at 5.

On June 28, 1943, plaintiff was discharged from duty. The Report of Physical Examination of Enlisted Man Prior to Discharge or Retirement states that plaintiff suffered from "Psychoneurosis, mixed type" incurred under "unknown" circumstances. The certification of the immediate commanding officer on the discharge form states that "[i]n my opinion the disease was not incurred in the line of duty in the military service of the United States." Air Force Correction Board Proceedings at 24. The same certification is provided by the physician who performed the discharge physical examination.

The discharge was the result of a recommendation by the Army physician who was treating plaintiff in May, 1943. That physician concluded that plaintiff suffered from "[p]sychoneurosis, mixed type, severe, cause undetermined, manifested by extreme psychosomatic introspection, insomnia, and episodes of somnambulism all without organic basis." Air Force Correction Board Proceedings at 26. The treating

physician found that this condition was not incurred in the line of duty. *Id.*

Prior to his discharge, plaintiff had been hospitalized continuously from approximately April 30, 1943. The physician who took plaintiff's medical history at the time of a May 15, 1943 examination noted that plaintiff complained of "pain in knees, elbows, feet, since age of 8. Tires easily. Has nightmares and headaches." *Id.* at 28. That same physician recites the history of plaintiff's illness as follows:

This soldier states that he has been ailing since the age of 8 with pains in the knees, and elbows, headaches, nervousness and easy fatigability.) [*sic*] He states that he has had growing pains in his knees and that his entire family has rheumatic heart disease.

Is unable to stay on feet longer than 15 minutes because of pains in knees and shortness of breath.

Had a "nervous breakdown" at age of 17 and could not work for several months/Never could keep a job. Used to stay out naked on the street and was brought in by the milkman. Gets hysterical.

*Id.* at 29.

A May 23 physician's report relates a similar medical history and describes plaintiff's psychiatric status as follows:

Soldier is quite garrulous. He can go on indefinitely recounting long and varied symptomatology. Despite the disabling nature of his symptoms as he relates them, he does so with evident relish and with a smile. He is an emotionally inadequate individual, who never apparently adjusted well to life since his so called "nervous breakdown" at the age of 17. He shows extreme psychosomatic introspection. There is no evidence of psychosis or mental deficiency. He is a pronounced Psychoneurotic. He may have some parathyroid deficiency; this however is not clearly evident. Certainly his psychoneurotic manifestations cannot be explained on a parathyroid deficiency. They (are explained on the basis of an inadequate personality reaction and have

been continuously present for the last 4 or 5 years.) It is doubtful that any useful service can be obtained from this soldier and in view of his short period of service, separation under WD Cir. # 395 is recommended.

*Id.* at 33.

In 1944 plaintiff applied for and received disability benefits for his "nervous condition." *Id.* at 38. Those benefits were severed in 1957 "[s]ince a determination has been made that your nervous condition was not incurred in or aggravated by your military service in World War II." *Id.* at 39.

Plaintiff, represented by the Jewish War Veterans of the United States, appealed this decision to the Board of Veterans Appeals. The Board denied the appeal following a hearing at which plaintiff and his mother appeared as witnesses. That decision, issued July 26, 1957, stated that the Board had considered not only the military records in the case but also the testimony presented at the hearing, affidavits of plaintiff's friends and letters from various physicians who had treated plaintiff both before and after his period of service.

Plaintiff then applied to the Air Force Board for Correction of Military Records ("AFBCMR") for a revision of his military records which would recite that his mental problems were service-connected. That *pro se* petition was denied in January, 1961. The decision of the AFBCMR states that the military records and the facts presented by plaintiff failed "to establish a showing of probable error or injustice in your case." Proceedings of Air Force Board for Correction of Military Records at 1.

In 1982 plaintiff filed a new request with the AFBCMR for correction of his records. This time, proceeding with the assistance of counsel, plaintiff asked that the records be amended "to delete all reference to any mental disorder or nervous breakdown existing prior to induction in the Armed Forces." Air Force Correction Board Proceedings at 2. This request for amendment of records was accompanied by a large number of exhibits. They included letters written by five physicians who had

seen plaintiff after his discharge from the service, all of whom concluded that plaintiff's mental condition was service-connected. In addition, the AFBCMR was provided with a letter from Dr. Leon Kacher who had treated plaintiff during his youth. That letter states "[a]s much as I am able to recall, I treated Mr. Mozur on two or three occasions in the later thirties or early forties for some general complaints—upper respiratory infection and gastro-intestinal upset. I did not treat him for any neurologic or psychiatric complaints." *Id.* at 57. The application was also accompanied by over forty letters from persons who had known plaintiff prior to his induction in the service who stated that he did not suffer from any psychiatric problems prior to his period of service.

On January 25, 1983, the AFBCMR denied the renewed application. The decision of the AFBCMR stated, in pertinent part:

2. The application was not timely filed; however, it is in the interest of justice to excuse the failure to timely file.

3. Insufficient relevant evidence has been presented to demonstrate the existence of probable error or injustice. Applicant's contentions are duly noted; however, we agree with the opinion and recommendation of the Office of the Surgeon and adopt their rationale as the basis for our conclusion that the applicant has not been the victim of an error or injustice. Therefore, in the absence of substantial evidence to the contrary, we find no compelling basis to recommend granting the relief sought.

The recommendation of the Office of the Surgeon relied upon by the AFBCMR states:

1. Applicant's entire case file has been reviewed and is forwarded with the following findings, conclusions and recommendations.

2. The applicant was discharged from the Army Air Corps in June 1943 after a short period in the service. At this most late and untimely date

he applies requesting "amend record to delete all reference to any mental disorder or nervous breakdown existing prior to induction in the Armed Forces" because he has not been rated by the VA.

3. The records are correct. Service medical records clearly document applicant's mental condition existed prior to induction in the armed services and was not service-incurred.

4. VA records, including extensive review of his case by the Board of Veteran Appeals, clearly indicate applicant's mental condition is not service-connected.

5. The Surgeon General's Consultant Staff is of the opinion that no change in the records is warranted, the application is untimely, without merit and should be denied.

*Id.* at 4. The only Veterans Administration records in the documentation before the AFBCMR are those from the 1957 Board of Veterans Appeals decision approving the termination of plaintiff's benefits.

Plaintiff filed this action for review of the AFBCMR's 1983 decision soon thereafter. Cross-motions for summary judgment were filed in the spring of 1984. In a Memorandum/Order dated June 29, 1984, I concluded that I should consider this appeal on the merits despite defendant's contention that the appeal was barred by laches. However, I found that before I could evaluate the merits of the motions, I would need further briefing on the applicability and content of an Army regulation which, plaintiff contended, established a presumption of sound condition upon induction or a presumption that any condition was aggravated in the service. Army Regulation 40–1025 (December 12, 1944). *See Ludzinski v. United States*, 154 Ct.Cl. 215 (1961). I directed that such additional briefing be provided according to a schedule established in that Memorandum/Order and that "all submissions should include copies of the full text of all regulations cited." *Mozur v. Orr*, No. 83–1204 (June 29, 1984) at 5.

The parties have now filed supplemental briefs and the matter is ripe for consideration. Plaintiff's motion for summary judgment argues that the AFBCMR decision was arbitrary and capricious and not based upon substantial evidence. Plaintiff suggests that the standards developed in the "parallel" area of Social Security disability benefit appeals should be applied to this case. Plaintiff notes that the preinduction physical evaluation of plaintiff showed that no disability, mental or physical, was present in December 1942. In addition, plaintiff points to the various affidavits and physicians' statements presented in support of the 1982 application to the AFBCMR for the proposition that the evidence of record overwhelmingly supports a finding that the disability was service-connected. Plaintiff suggests that any statements made by plaintiff to his doctors while he was hospitalized in the service are inherently untrustworthy since they are the statements of a man who was then suffering from severe mental illness. Furthermore, plaintiff contends that the Army regulation discussed in my Memorandum/Order of June 29, 1984 requires a presumption of soundness upon induction or service aggravation of a disability when the disability is not noted on the preinduction physical record and fits the characteristics of plaintiff's disability. Finally, plaintiff argues that this is not an appropriate case for remand to the AFBCMR for reconsideration since the delay inherent in such a remand will pose a substantial hardship for plaintiff. Instead, plaintiff contends that the evidence of record supports a decision to grant summary judgment for plaintiff and to order full amendment of plaintiff's military records as requested.

Defendant responds that the decision of the AFBCMR should be affirmed because the evidence is such that reasonable minds could disagree on the appropriate result. Defendant contends that plaintiff's service medical records as well as statements of the civilian physician who had treated plaintiff prior to his induction establish the necessary basis for the AFBCMR's decision. In addition, defendant disputes plaintiff's contention that plaintiff's statements while hospitalized are of little or no value. Defendant argues that there is no evidence that plaintiff was so severely mentally disabled at the time of his in-service hospitalization that he was unable to present an accurate picture of his medical history. Moreover, defendant suggests, the physicians who recorded these statements were able to observe the plaintiff's condition first-hand and could discount those statements if they believed that plaintiff's condition rendered the statements untrustworthy.

In evaluating the merits of these motions, it is first necessary to consider the appropriate standard of review to apply in an appeal from the decision of the AFBCMR. The parties agree that the applicable standard of review is that discussed in Chief Justice Burger's opinion in *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). "Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based upon substantial evidence. *See Grieg v. United States* [226 Ct.Cl. 258], 640 F.2d 1261 (Ct.Cl.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *Sanders v. United States* [219 Ct.Cl. 285], 594 F.2d 804 (Ct.Cl. 1979)." *Id.* at 2367. *See, e.g., Neal v. Secretary of Navy,* 639 F.2d 1029 (3d Cir. 1981); *Thornton v. Coffey,* 618 F.2d 686, 692 n. 3 (10th Cir.1980); *Nolen v. Rumsfeld,* 535 F.2d 888, 889 (5th Cir.1976); *Horn v. Schlesinger,* 514 F.2d 549, 553 (8th Cir. 1975); *Hodges v. Callaway,* 499 F.2d 417, 423 (5th Cir.1976); *Benvenuti v. Department of Defense,* 587 F.Supp. 348, 355 (D.D.C.1984); *Lord v. Lehman,* 540 F.Supp. 125 (E.D.Pa.1982). The Court of Claims has put the matter well:

To recover for failure to correct an alleged injustice, such as perhaps based on gross material error of fact or an action contrary to all evidence, it must be proved that such failure was arbitrary and capricious, or in bad faith, or contrary to law, or without rational basis, seriously prejudicial to plaintiff, and with

monetary consequences. In such event, the abuse of administrative discretion rises to the level of legal error which merits judicial relief. These are comparatively rare cases.... Perhaps they are infrequent because the proof must overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith.

*Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804, 813 (1979).

Plaintiff asserts that the AFBCMR decision was arbitrary and capricious and not supported by substantial evidence both because the AFBCMR did not apply the presumptions of soundness or service aggravation established by the applicable Army regulation and because the evidence before the AFBCMR is insufficient to support the conclusion reached.

■ It is well-established that the various branches of the military, like civilian administrative agencies, are bound by their own regulations. *E.g., Neal v. Secretary of the Navy*, 639 F.2d 1029 (3d Cir.1981); *Biddle v. United States*, 186 Ct.Cl. 87 (1968). Plaintiff claims that the AFBCMR failed to satisfy this basic requirement by ignoring Army Regulation 40–1025 (December 12, 1944) which establishes certain presumptions regarding the medical conditions of Army personnel. The parties agree that, if any regulation is applicable to the AFBCMR decision in this case, it is that 1944 regulation since it was in force at the

time of plaintiff's discharge from the Army Air Corps.[1] Although the Army Air Corps has long since become the Air Force and, as such, is subject to regulations promulgated by the Secretary of the Air Force, in 1943, Army regulations governed the Army Air Corps.

Defendant contends, however, that AR 40–1025 does not apply to plaintiff's case because that regulation applies solely to claims of officers who have at least twenty years of service. In fact, defendant asserts, that regulation is only applicable to determinations of the Disability Review Board and not to the AFBCMR. Defendant thus seeks to distinguish the opinion relied upon by plaintiff, *Ludzinski v. United States*, 154 Ct.Cl. 215 (1961), on the ground that Mr. Ludzinski fulfilled those criteria necessary for the application of AR 40–1025.

Defendant's position is not supported by *Ludzinski*. In that case, as in this, the Court of Claims was directly reviewing a decision of the AFBCMR. Defendant is correct that in *Ludzinski* the AFBCMR had referred the matter to the Disability Review Board and then adopted the recommendations of that Board as its own findings, but the body whose decision was under review was the AFBCMR.

■ Furthermore, the claimant in *Ludzinski* had not served in the military for twenty years as defendant now asserts. Mr. Ludzinski enlisted in the National Guard in 1939. He was inducted into regu-

---

1. Neither party has addressed the question why a regulation apparently issued in 1944 would be applicable to a serviceman discharged in 1943. However, both parties have stated that if any regulation applies to this case it is AR 40–1025 except that defendant has presented certain limited arguments that AR 40–1025 is inapplicable. Since neither party has suggested that there is any reason for AR 40–1025 not to apply to plaintiff merely because of the time of plaintiff's service and the date of issuance of the regulation, I will not explore that issue.

With plaintiff's supplemental memorandum of law and the addendum to that memorandum, plaintiff has also provided this court with copies of current Air Force regulations, AFR 35–4 and AFR 160–43. Plaintiff contends that these regu-

lations are not directly applicable to plaintiff's case but that they may contain information or presumptions which this court would find instructive in determining whether the AFBCMR decision was proper.

The parties agree that, if the AFBCMR had an obligation to apply presumptions established by military regulations, its obligation was to apply those regulations in force at the time of plaintiff's discharge and that AR 40–1025 is the only such regulation potentially applicable to plaintiff's case. Therefore, in determining whether the AFBCMR committed legal error in failing to apply relevant military regulations, I will consider only AR 40–1025 and not the more recent Air Force regulations provided by plaintiff.

lar service in 1940 and in 1942 he was assigned to the Air Corps, then a division of the Army. Mr. Ludzinski was discharged on the basis of his disability in 1945. Thus, at most, he could have been credited with six years of active service. Therefore, I find no basis in the materials presented by either party for the conclusion that AR 40–1025 should not apply to plaintiff's case because he did not serve for twenty years.

In addition, defendant provides no support for the proposition that AR 40–1025 applies solely to claims of individuals who were officers in the Army at some point during their military service. The only text of AR 40–1025 made available to this court by the parties is that portion of that regulation found in the *Ludzinski* opinion. However, the text and discussion of AR 40–1025 in *Ludzinski* does not support this aspect of defendant's argument. The section of AR 40–1025 quoted in that opinion refers solely to "militarized person[s]." *Ludzinski*, 154 Ct.Cl. at 266. There is no definition of that term provided in the opinion but that language does not appear to limit the application of this regulation to officers. Since defendant has pointed to no authority other than *Ludzinski* for its contention that AR 40–1025 is relevant to claims of officers only, I cannot conclude that AR 40–1025 is inapplicable to plaintiff's case on that basis.

Finally, the Court of Claims decision in *Ludzinski* contradicts defendant's assertion that AR 40–1025 is inapplicable to proceedings before the AFBCMR. At the conclusion of its discussion of AR 40–1025 and certain military manuals on medical matters, the court noted:

> The regulations are not to be lightly taken. They must be strictly observed. They are "binding on the retiring boards, and on the Surgeon General, and on the Disability Review Board, and on the Board for Correction of Military Records and on the Secretary of War. Since they were reasonably designed to carry into effect acts of Congress, they have the force and effect of law." *Prichard v.*

*United States,* 133 Ct.Cl. 212, 216 [135 F.Supp. 420 (1955)].
*Id.* at 230.

Thus, I have discovered no support for defendant's arguments that AR 40–1025 is limited in applicability to factual circumstances not found in the present case. Defendant has provided no other arguments against the application of AR 40–1025 to plaintiff's case. Consequently, it would appear that that regulation and the presumptions therein should have been considered by the AFBCMR. The most obvious source to look to to determine whether this regulation is so applicable is the language of the regulation itself.

Unfortunately, despite the direction in my Memorandum/Order of June 29, 1984 that the supplemental submissions regarding the applicable regulations "should include copies of the full text of all regulations cited," *Mozur v. Orr*, No. 83–1204 (E.D.Pa. June 29, 1984) at 5, the only text of AR 40–1025 provided to me is that found in the Court of Claims decision in *Ludzinski*, 154 Ct.Cl. 209 (1961). Although that opinion is quite thorough in its review of the facts and applicable law, it quotes only a portion of the regulation and omits substantial sections thereof. In fact, the opinion quotes only subsections of paragraph 63 of AR 40–1025 and does not indicate the nature of the omitted material.

The quotation of AR 40–1025 found in *Ludzinski* reads as follows:

> Par. 63 * * *
>
> b. *Basic provision for determining line of duty.*—A disease or injury that a militarized person contracts or sustains, while in the active military service of the United States, will be presumed to have been incurred in line of duty, unless there is substantial evidence to show that such disease or injury—
>
> \* \* \* \* \* \*
>
> (4) Existed prior to the individual's current active service and was not aggravated by the service (g below).
>
> \* \* \* \* \* \*

g. Existed prior to individual's current active service and was not aggravated by service (EPTS).

\* \* \* \* \* \*

(2) *Basic provision.*—Irrespective of length of service, an Army patient will be presumed to have been in sound condition upon entering active service, unless the disease or injury, or the conditions which brought about the disease, injury, or death, were noted on the patient's physical examination upon entrance into the service, or unless clear and unmistakable evidence ((3) below) demonstrates that the injury or disease, or the conditions which caused the disease, injury, or death, though not noted, existed prior to the patient's active service. Further, even if the existence of the condition prior to entering active service has been established, only specific findings of "natural progress" of the disease or injury, based on well-established medical principles, are able to overcome the presumption of service-aggravated ((4) below). This provision will serve as a basis for judging line of duty in all cases, on or after 7 December 1941, and before the termination of hostilities incident to the present war. (It will be borne in mind that in determining benefits, the incapacity, whether resulting from a condition incident to service, or from a condition that existed prior to service but aggravated by the service beyond the "natural progress" of the condition, must be permanent; that is, the incapacity caused by the condition must be such that the removal of the disability within a reasonable time is highly improbable; \* \* \*

(3) *Clear and unmistakable evidence.* —Medical judgment alone, as distinguished from well-established medical principles, will not be considered sufficient to rebut the presumption of the patient's sound condition at the time of his entrance into active military service. \* \* \*

(4) *Service-aggravated.*—Any increase in disability during active service resulting from a condition that existed prior to active service will be presumed to have been service-aggravated, unless it can be proved otherwise on the bases of well-established medical principles. Medical or surgical treatment furnished during service for preexisting conditions does not, of itself establish increase in disability; however, if such treatment was necessitated by increase in severity of preexisting conditions, then such disability will be considered as service-aggravated, unless the condition was improved by such treatment. \* \* \*

(5) *Psychiatric cases.*

(a) *In line of duty.*—The following cases will be considered to be in line of duty irrespective of length of service:

\* \* \* \* \* \*

2. Cases of \* \* \* psychoneurosis occurring in individuals in whom predisposition to these diseases, but not the actual disease itself, existed prior to entry into the service. Neurotic traits in themselves will not be regarded as necessarily indicating the presence of psychoneurosis or psychosis.

3. Psychiatric conditions occurring in individuals in whom such conditions existed prior to entry into the service, but where there is evidence to show that the disorder has been aggravated by the service. \* \* \*

(b) *Not in line of duty.*—The following cases will be considered to be not in line of duty: cases of \* \* \* psychoneurosis where available evidence clearly indicates the existence of the disease prior to entry into the service, and that the disease was not aggravated by the service.

*Id.* at 266–68.

Under the circumstances, I could again direct counsel to submit the full text of AR 40–1025. In the alternative, since the parties apparently agree that the portion of AR 40–1025 quoted in *Ludzinski* is the only language which bears on the present case, and since defendant has provided specific arguments against the application of this regulation all of which I have rejected, I could address the AFBCMR decision on the assumption that AR 40–1025 is applica-

ble and that I am in possession of all relevant subsections of that regulation. In light of the long delays which have already occurred in this action and the fact that the parties have already been allowed ample opportunity to expand on their arguments relating to AR 40–1025, I will follow the latter course.

AR 40–1025 provides that a patient will be presumed to have been in sound condition upon entering active service, unless the disease or injury or the conditions which brought such disease or injury about were noted on the patient's physical examination upon entrance into the service or unless "clear and unmistakable evidence ((3) below) demonstrates that the injury or disease or the conditions which caused the disease, injury, or death, though not noted, existed prior to the patient's active service." As already noted, plaintiff's physical examination upon induction did not indicate the existence of any psychological problems. Therefore, to rebut the presumption created by the regulation that plaintiff was in sound condition at the time of induction, it is necessary to find "clear and unmistakable evidence" that the disease or the conditions which caused the disease existed prior to service. Subsection 3 cited in this portion of the regulation defines "clear and unmistakable evidence" as follows:

> Clear and unmistakable evidence.—Medical judgment alone, as distinguished from well-established medical principles, will not be considered sufficient to rebut the presumption of the patient's sound condition at the time of his entrance into active military service....

Furthermore, even if such clear and unmistakable evidence exists to establish the presence of the disease prior to induction, the regulation also provides that "only specific findings of 'natural progress' of the disease or injury, based on well-established medical principles, are able to overcome the presumption of service-aggravated ((4) below)."

Subsection (4) reads as follows:

> Service-aggravated.—Any increase in disability during active service resulting from a condition that existed prior to active service will be presumed to have been service-aggravated, unless it can be proved otherwise on the bases of well-established medical principles. Medical or surgical treatment furnished during service for preexisting conditions does not of itself establish increase in disability; however, if such treatment was necessitated by increase in severity of preexisting conditions, then such disability will be considered as service-aggravated, unless the condition was improved by such treatment....

There are also specific provisions regarding psychiatric disabilities. A psychiatric condition will be presumed to be incurred in the line of duty when a predisposition toward the disease, but not the disease itself, existed prior to induction, and also when there is evidence of service-aggravation of the condition even if it existed prior to induction. However, where the evidence clearly indicates the existence of psychoneurosis prior to service and no in-service aggravation of the condition, the psychoneurosis will not be "considered ... in line of duty."

Thus, it is necessary to determine whether the AFBCMR found "clear and unmistakable evidence" before it to show that the plaintiff's condition predated his induction and/or whether there were specific findings of natural progress of the disease from the time of induction to the time of discharge to establish that the condition was not service-aggravated. In addition, it is appropriate to consider whether the AFBCMR found that the evidence before it "clearly indicates the existence of the disease [psychoneurosis] prior to entry into the service" and that the disease was not aggravated in service. If such findings were made by the AFBCMR then the decision of that Board upon review of plaintiff's application for amendment of his records would have been made in compliance with AR 40–1025.

To determine whether the AFBCMR complied with AR 40–1025 it is necessary for me to look to the decision issued by that Board when it denied plaintiff's application. This is also the first step to be taken in determining whether plaintiff's second challenge to the AFBCMR decision—that the decision was not supported by the evidence before the Board—warrants reversal of the conclusion not to amend plaintiff's records. Reference to the AFBCMR decision is the proper starting point in this review because "there is a strong presumption that the personnel involved in the decisionmaking process have faithfully discharged their duties.... Such deference applies not only to the military but to any decisionmaker whose decision is to be reviewed under a standard that assumes discretion has been exercised soundly, in the absence of proof to the contrary. That is the basis for selection of an arbitrary and capricious standard rather than one providing less restrictive review." *Neal v. Secretary of the Navy*, 639 F.2d 1029, 1037–38 (3d Cir.1981).

■ However, although the standard of review to be applied in the present case is quite deferential, the court conducting the review must be provided with sufficient information from which to determine that the AFBCMR decision was proper.

The normal rule where a discretionary administrative decision is to be reviewed by a court (other than on a *de novo* basis) is that the agency must give sufficient indication of the grounds for its exercise of discretion that the reviewing tribunal can appraise that determination under the appropriate standards of review (and the applicant for relief can challenge it). The basic concept has been reiterated time and again—in differing formulations and contexts but always centering on the need for the court, and the complaining party, to be given some helpful insight into the agency's reasoning....

The fundamental principle of reasoned explanation embodied in these (and comparable) decisions serves at least three interrelated purposes: enabling the court to give proper review to the administrative determination; helping to keep the administrative agency within proper authority and discretion, as well as helping to avoid and prevent arbitrary, discriminatory, and irrational action by the agency; and informing the aggrieved person of the grounds of the administrative action so he can plan his course of action (including the seeking of judicial review).

*Matlovich v. Secretary of the Air Force*, 591 F.2d 852, 857 (Ct.Cl.1978).[2] Thus, while the agency need not provide an extensive exegesis of the rationale underlying its decision, *Neal v. Secretary of the Navy*, 639 F.2d 1029, 1038 (3d Cir.1981), there must be a sufficient discussion of the reasoning which led to the AFBCMR's conclusion to allow a court properly to review that decision. *E.g., Istivan v. United States*, 231 Ct.Cl. 671, 689 F.2d 1034, 1038 (1982); *Werner v. United States*, 266 Ct.Cl. 462, 642 F.2d 404, 408 (1981); *Buchanan v. United States*, 223 Ct.Cl. 291, 621 F.2d 373, 383 (1980); *Hary v. United States*, 223 Ct.Cl. 10, 618 F.2d 704, 708 n. 6 (1980); *Kowal v. United States*, 188 Ct.Cl. 631, 412 F.2d 867, 873 (1969); *Beckham v. United States*, 183 Ct.Cl. 628, 392 F.2d 619, 622 (1968); *Lord v. Lehman*, 540 F.Supp. 125, 130 (E.D.Pa.1982).[3]

**2.** In certain cases, courts have determined that the military board whose decision is under review was required by regulation to state specific findings. *E.g., Flute v. United States*, 210 Ct.Cl. 34, 535 F.2d 624, 628 (1976); *VanBourg v. Nitze*, 388 F.2d 557, 565 (D.C.Cir.1967); *Amato v. Chafee*, 337 F.Supp. 1214, 1219 (D.D.C.1972). In those cases the board was required to issue specific findings because it had conducted a hearing on the application. *See* 32 C.F.R. § 865.12 (AFBCMR must issue written findings following a hearing). Since no hearing was provided in the present case and since plaintiff has not challenged the AFBCMR's decision not to hold a hearing on his application, I have no basis for concluding that the degree of specificity with which the AFBCMR must present its findings is governed by a regulation having the force of law.

**3.** Most of the decisions in this area arise in the Court of Claims which has exclusive jurisdiction of all contract actions against the United States

**782**

The decision of the AFBCMR in the present case states that the "Board took notice of the applicant's complete submission in judging the merits of the case." Air Force Correction Board Proceedings at 2. In the portion of the decision reserved for a statement of the facts, the Board cites to the "memorandum prepared by the Office of the Surgeon (Exhibit C)" and states that "therefore, a recitation of these facts is not set forth hereinafter." Apparently, this statement reflects the AFBCMR's determination that it would adopt the Office of the Surgeon's statement of the facts. Then, in the section of the AFBCMR's decision entitled "The Board Concludes That:" the first two paragraphs recite that all administrative remedies have been exhausted and that, although the application was not timely, it is in the interest of justice to excuse the untimeliness. The third paragraph of this section states:

> Insufficient relevant evidence has been presented to demonstrate the existence of probable error or injustice. Applicant's contentions are duly noted; however, we agree with the opinion and recommendation of the Office of the Surgeon and adopt their rationale as the basis for our conclusion that the applicant has not been the victim of an error or injustice. Therefore, in the absence of substantial evidence to the contrary, we find no compelling basis to recommend granting the relief sought.

Since the only reasoning provided by the AFBCMR in support of its denial of plaintiff's application is the decision of the Office of the Surgeon, I will look to that recommendation and treat it as a part of the decision of the AFBCMR. However, that document presents only the following reasons for the conclusion reached therein:

3. The records are correct. Service medical records clearly document applicant's medical condition existed prior to induction in the armed services and was not service-incurred.

4. VA records, including extensive review of his case by the Board of Veteran Appeals, clearly indicate applicant's mental condition is not service-connected.

The VA records in question are those prepared in 1957.

■■ The reasoning provided by the Office of the Surgeon and adopted by the AFBCMR is insufficient to allow proper judicial review of the conclusions reached. As the Court of Claims stated in *Beckham v. United States,* 183 Ct.Cl. 628, 392 F.2d 619, 622 (1968):

> there is no satisfactory showing on the record that the board's determination was based upon a balanced consideration of all the evidence available and presented. A naked conclusion and mere recitation that the opinion is based upon all of the evidence without an analysis of the evidence in writing (as here), is inimical to a rational system of administrative determination and ultimately inadequate.

The decision of the AFBCMR is apparently based upon the conclusion that the military medical records which were fully evaluated by the Board of Veterans Appeals support a finding that the plaintiff's disability existed prior to his induction into the military. However, it is the obligation of the AFBCMR, as it is the duty of all administrative bodies whose decisions may be reviewed by the courts, to show that it has considered *all* of the evidence before it and to state why evidence contrary to the ultimate conclusion reached was disregarded or given lesser weight. There is nothing in the decision of the AFBCMR or of the Office of the Surgeon which would suggest that either body evaluated the evidence presented with the application which post-dated the decision of the Board of Veterans Appeals. This evidence included statements from a number of physicians as well as non-expert opinions from individuals who knew plaintiff prior to his military service that plaintiff did not suffer from any mental disorders at that time. Thus, the decision of the AFBCMR does not re-

where the amount in controversy exceeds $10,-

000. 28 U.S.C. §§ 1346(a)(2), 1491.

flect a balanced consideration of all the evidence available and presented. Furthermore, the decision is so sketchy and conclusory as to be unreviewable.

 In this situation, the court may either look to the record as a whole, without giving much deference to the conclusion of the Board, to determine whether the plaintiff should be awarded the relief requested, *e.g., Istivan v. United States,* 231 Ct.Cl. 671, 689 F.2d 1034, 1038 (1982); *Hary v. United States,* 223 Ct.Cl. 10, 618 F.2d 704, 708 n. 6 (1980); *Buchanan v. United States,* 223 Ct.Cl. 291, 621 F.2d 373, 383 (1980); *Beckham v. United States,* 183 Ct.Cl. 628, 392 F.2d 619, 623 (1968), or remand the matter to the AFBCMR for reconsideration of the application and for preparation of a more complete discussion of the basis for its conclusion. *E.g., Bishop v. United States,* 230 Ct.Cl. 215, 673 F.2d 1369 (1982); *Matlovich v. Secretary of the Air Force,* 591 F.2d 852 (Ct.Cl.1978); *United States v. Spritzen,* 262 F.Supp. 632 (E.D.Pa.1967). Because the AFBCMR possesses particular expertise in reviewing applications of this nature and in applying the regulations of the Air Force and the predecessor Army Air Corps and because it is not apparent that the AFBCMR has had a full opportunity to consider the evidence before it which post-dated the Board of Veterans Appeals' decision, I conclude that a remand is the preferable alternative in this case.

I have considered the plaintiff's assertion that a remand will impose an unreasonable hardship upon the plaintiff and that the evidence supports a grant of summary judgment for plaintiff. However, upon review of the record, I do not find that the evidence so overwhelmingly supports plaintiff's position as to justify this court in replacing the AFBCMR as the primary decisionmaker.[4]

**4.** Moreover, the burden visited on plaintiff by remand is no greater than that involved in a wide variety of cases in which remands of this nature are commonplace (e.g., Social Security disability determinations).

Accordingly, I will deny both motions for summary judgment without prejudice and remand this matter to the Secretary of the Air Force and the AFBCMR for reconsideration and development of the record for appeal in light of this opinion.[5]

**5.** Should either party seek judicial review of the action of the AFBCMR following this remand, the parties will then have the opportunity to supplement their submissions with regard to the scope, contents and applicability of AR 40–1025 and to produce a complete copy of the language of that regulation.